NORTH AMERICAN LIFE ASSURANCE CO. *v.* JONES.

1. INSURANCE—LIFE INSURANCE—CANCELLATION OF POLICY—FRAUD —EVIDENCE—CONSULTATION WITH PHYSICIANS—HEART TROUBLE.

   In suit by insurer to cancel life insurance policy on ground deceased had made false answers to questions on application respecting consultation with medical advisors and condition of heart with fraudulent intent to deceive, evidence, showing several consultations with various doctors respecting heart trouble and knowledge upon part of insured of his condition, *held,* to show insured did knowingly falsely answer some material questions in the application.

2. SAME—MISSTATEMENTS IN APPLICATION—FRAUD.

   Misstatements in application for life insurance policy which materially affect the risk constitute sufficient grounds for cancellation of the policy, though made in good faith, it not being essential that actual fraud be found (3 Comp. Laws 1929, § 12444).

3. SAME—MISSTATEMENTS MATERIALLY AFFECTING RISK—CANCELLA-
TION OF POLICY.

> Applicant for insurance who represented he did not have a regu-
> lar medical advisor and had not consulted a physician pertain-
> ing to heart disease for about two years, each of which repre-
> sentations was false and materially affected the risk of the
> insurer *held,* sufficient to justify cancellation of policy in
> absence of showing of knowledge on part of insurer of any
> abnormal heart condition or that applicant had consulted a
> physician regularly (3 Comp. Laws 1929, § 12444).

Appeal from Wayne; Moll (Lester S.), J. Sub-
mitted October 13, 1938. (Docket No. 62, Calendar
No. 40,185.) Decided February 2, 1939.

Bill by North American Life Assurance Company,
a Canadian corporation, against Eleanor W. Jones,
as administratrix of the estate of Lawrence H. Jones,
deceased, to cancel a life insurance policy. Decree
for plaintiff. Defendant appeals. Affirmed.

*Butzel, Levin & Winston* (*Chris M. Youngjohn* and
*Morris W. Stein,* of counsel), for plaintiff.

*Atkinson, Donnelly & Lyon,* for defendant.

NORTH, J. After tendering repayment of pre-
miums, plaintiff filed its bill in equity seeking the
cancellation of a life insurance policy covering the
life of Lawrence H. Jones, now deceased. Eleanor
Jones, administratrix of estate of the insured, was
made defendant. On the application of Jones dated
December 6, 1935, the policy was executed Decem-
ber 17, 1935. In substance, the application stated
that Jones did not have a regular medical advisor,
that he had not been under observation or treatment
in any hospital except for a tonsillectomy, that he

had been last medically examined in 1933, that he had never suffered from, consulted a physician about, or had any disturbance or symptoms pertaining to the circulatory system as, for example, heart disease or weakness, shortness of breath, palpitation of the heart, pain about the heart, varicose veins, high blood pressure, et cetera. Plaintiff asserts, that the questions were answered falsely and with fraudulent intent to deceive; and that relying on the truthfulness of the answers the policy in question was issued. Defendant contends that there was no fraud and further, that the plaintiff did not rely upon the answers in the application because it had complete knowledge of the insured's condition and therefore is estopped from setting up the falsity of the answers. Defendant, by cross-bill, seeks payment of the policy. From a decree granting cancellation defendant has appealed.

The testimony shows that several times between August 14, 1931, and September 25, 1936, Jones consulted a Doctor Maloney. On October 31, 1931, the patient complained of pain over the right arm and chest which led the doctor to suspect angina pectoris and since Dr. Maloney was not a heart man, he referred Jones to a competent cardiologist, Dr. Colvin, who took an electrocardiograph. During 1931, Dr. Maloney told the patient that he had heart trouble— that he was suffering from spasms of the coronary vessels, but after an examination on September 7, 1934, the doctor told Jones that he found no evidence of pathology. Dr. Colvin took another electrocardiograph on September 8, 1934, which showed a curve within normal limits and therefore did not indicate anything abnormal. A copy of this electrocardiogram was inclosed in a letter dated October 31, 1934, which was sent to plaintiff by its agent Miller.

On September 25, 1934, Jones went to the University Hospital at Ann Arbor. He was in the outpatient department and returned at intervals. During his first visit he was carefully examined by Dr. Freund who found his heart normal. But a diagnosis on November 12, 1935, showed a heart condition—arteriosclerotic heart disease, slight cardiac enlargement, angina pectoris. The insured, on April 16, 1936, visited an osteopathic physician and when Jones was asked " 'how long have you had these so called heart symptoms,' replied, 'Approximately two years.' " The osteopath's diagnosis revealed an irritable heart caused by fatty degeneration. But on October 24, 1936, the last time insured was treated by the osteopath, there were no chronic symptoms of heart condition. At the age of 43, coronary thrombosis caused insured's death on October 25, 1936.

From this evidence it is clear that the representations and answers in the application were false. If they had been truthful the policy would not have been issued until an investigation had been made.

Defendant contends that plaintiff had knowledge of insured's physical condition and consequently the false answers are immaterial and plaintiff is estopped from asserting its reliance upon them. Before the issuance of other policies to the insured in 1933 and 1934, and the policy in suit in 1935, the plaintiff's doctor examined Mr. Jones but discovered no heart trouble. In 1934, a policy was issued in which waiver of premium and total disability benefits were asked. Plaintiff's underwriting department denied the waiver of premium benefits because of certain medical features which when explained referred to insured's history of sugar. Subsequently Mr. Jones submitted to a laboratory test which

showed a perfectly normal reaction. On the basis of this report and a letter from Mr. Miller, agent of plaintiff, which detailed the cause of the sugar previously found as the result of eating a quantity of sweets at a party the night before, plaintiff issued the waiver of premium benefits but declined to issue the total disability benefits. Plaintiff is a member of the recording and statistical bureau to which reports are submitted by the insurance companies concerning the physical conditions of those they examine for the purpose of issuing insurance. From this bureau, plaintiff, at the time of issuing the policy in suit, had the following data about Mr. Jones:

"Mr. Jones had been overweight in 1926; he was 5 feet 5 inches, and weighed 189 pounds. In 1927 some examiner found sugar in his urine. In April, 1927, he had a carbohydrate test, that is, he was given sugars to see how he handled them. There was another test in July, 1927; that test was satisfactory. Between April and July there is also a record of a trace of albumin being found in the urine. It must have been very small as the amount is not recorded. The date of the finding was April, 1927. The date of the examination without finding was July, 1927.

"In November, 1928, the applicant had lost weight. His weight then was 176 pounds. On February 13, 1929, there was no sugar found in his urine. In March, 1932, it was reported that he had had an attack of vertigo, or syncope, which means dizziness, syncope means occasional fainting; one attack within one year; so it must have been 1931 when he suffered this attack. At the same date he was reported to have had some trouble with his nose or throat, possibly including diseases of the sinus, we don't know; general classification of the diseases of the nose, throat and so on. And the last information we

have about Mr. Jones from the bureau was that on the 31st day of May, 1933, a faint trace of albumin was accidentally found in his urine, 10 milligrams being the amount, which is negligible even with an ordinary person.

"We wrote to the company which reported this incident of vertigo, and received information to this effect: 'This man gave a history of having had streptococcic sore throat in July, 1931, which lasted for a period of 15 days. His attending physician advised that for five weeks the man suffered from this sore throat prostration, and also from some vertigo,' which simply means dizziness. With that explanation, there was nothing that would materially affect the risk. Vertigo is very common with septic infection. It did not cast any suspicion on the heart."

Defendant asserts that the electrocardiogram received by plaintiff in October, 1934, disclosed the fact that Jones had consulted a doctor and put plaintiff on notice of any heart trouble. However, this electrocardiogram shows curves within normal limits and does not reveal a heart condition, nor does it show that Jones regularly sought medical attention thereafter.

Notwithstanding the record reveals a knowledge of insured's condition in certain respects, still there is nothing in the record indicating any knowledge on the part of the plaintiff, at the time of issuing this policy, that insured had repeatedly consulted physicians, nor that plaintiff had any reason to suspect a heart condition. This record conclusively shows the insured did knowingly falsely answer some of the material questions in the application. It is not essential, however, that we find actual fraud. Misstatements made in good faith which materially affect acceptance of the risk constitute sufficient grounds

for cancellation of the policy. 3 Comp. Laws 1929, § 12444 (Stat. Ann. § 24.280); *National Life & Accident Ins. Co.* v. *Nagel,* 260 Mich. 635; *Prudential Ins. Co. of America* v. *Ashe,* 266 Mich. 667.

The evidence clearly shows that as late as November, 1935, Jones consulted physicians concerning his condition and at that time a definite heart disturbance was revealed. His statement to the osteopath that he had had these heart symptoms for two years indicates his knowledge of his own condition at the time he made application for the insurance in question. In *Bellestri-Fontana* v. *New York Life Ins. Co.,* 234 Mich. 424, we said:

"He concealed a material fact by a false representation. The insurer had a right to know that he had consulted a physician, the application called for such knowledge, and if it had been imparted the insurer could have made investigation."

Such statements in Jones's application were material. They definitely affected the assumption of risk by the plaintiff. In the absence of any showing that plaintiff had knowledge beyond the limits hereinbefore detailed, the circuit court in chancery properly decreed cancellation. The decree is affirmed. Costs granted to appellee.

WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred. BUTZEL, C. J., did not sit.