**MUTUAL BENEFIT HEALTH & ACCI-
DENT ASS'N v. SNYDER.
No. 8301.**

Circuit Court of Appeals, Sixth Circuit.
Feb. 7, 1940.

Clifford M. Toohy, of Detroit, Mich., for appellant.

Harold Helper and Morris H. Marks, both of Detroit, Mich. (Drexelius, Helper & Marks, of Detroit, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

On March 16, 1939, appellee filed a motion to dismiss this appeal from the final judgment entered in the District Court on January 16, 1939, when appellant's motion

for a judgment non obstante veredicto was overruled. The motion is upon the ground that appellant failed to comply with 73(g) of the Rules of Federal Procedure, 28 U.S. C.A. following section 723c, as to filing record on appeal.

Rule 73(g) provides that the record on appeal, as required under Rules 75 and 76, shall be filed with the appellate court and docketed within forty days from the date of notice of appeal as required under Rule 73(b). The court, in its discretion, may extend the time to not more than ninety days from the date of notice provided the order of extension is made within the original forty days.

In the present case the notice was filed in the lower court on January 27, 1939, and the record was filed on May 9, 1939. On March 20, 1939, appellant made motion for an extension of time on the ground that its counsel had been engaged in other litigation and unable to prepare the transcript. In response the court, on March 27, 1939, extended the time to April 27, 1939, and on April 19, 1939, further extended it to May 27, 1939.

Appellee insists that the orders of extension, not being within the period of forty days, are void because the court lacked authority under 73(g), but appellant counters that such authority is found under Rule 6(b). The latter rule provides that when, by the rules or by notice given thereunder or by order of court, an act is required or allowed to be done within a specified time, the court, in its discretion, may, at any time for cause shown (1) order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by previous order or (2) permit the act after expiration of the specified period if prior failure was due to excusable neglect; but it may not extend the period provided by law for taking an appeal.

This rule would apply but for the provisions of Rule 73(g) which prohibits the district court from extending the time to more than ninety days from the notice.

■ As the order of extension herein was made after the expiration of the 40-day period, it is wholly invalid and lends no support for appellant filing the record on appeal May 9, 1939. However, Rule 73(a) provides that after filing notice of appeal " * * * Failure of the appellant to take any of the further steps to secure the review

of the judgment appealed from does not affect the validity of the appeal, but is ground only for such remedies as are specified in this rule or, when no remedy is specified, for such action as the appellate court deems appropriate, which may include dismissal of the appeal."

■ The rules here in question have not been construed heretofore and in order to expedite the decision of cases, the simplification of procedure and the administration of justice, consistent with their purpose, we are satisfied that under the circumstances of this case, failure to file the record in the case at bar was excusable and the motion to dismiss on that ground is denied. Toledo Metal Wheel Co. v. Foyer Bros. & Co., 6 Cir., 223 F. 350; Ainsworth v. Gill Glass & Fixture Co., 3 Cir., 104 F.2d 83; Shea v. United States, 6 Cir., 224 F. 426.

As an additional reason for dismissal, appellee urges the failure of appellant to file with the clerk of the district court, assignment of errors as provided under Rule 11 of this court, before it was modified by Rule 36.

■ Under Rule 75(d) of Federal Procedure, assignments of error are abolished unless the appeal is based on a part of the record only, in which event the points relied upon are to be stated at the time of designation. In the present case, the appeal is based on the entire record and appellee's contention is without merit.

On July 12, 1937, David Faigenbaum of Detroit, Michigan, applied to the appellant, Mutual Benefit Health & Accident Association, for a combination health and accident policy with the appellee, Anna Faigenbaum Snyder, then his wife, beneficiary. The appellant issued its policy to the applicant without a medical examination, relying on the truthfulness of the answers given by him in his written application which became a part of the policy. The policy was for the principal sum of $5,000 with double indemnity in case the insured lost his life by accidental means while a passenger on a common carrier.

The applicant was asked if he were sound physically and mentally and replied in the affirmative. He made a negative answer to the question as to whether he had received medical advice or treatment or suffered from any local or constitutional disease within the past five years. He also agreed that the policy for which he applied should not become effective until appellant

had accepted his application and he had accepted the policy while in good health and free from injury.

He further agreed that the appellant should issue its policy based on his statements of fact as to his physical condition and that the policy should be unenforceable if any statement were made by him with intent to deceive or which materially affected either the acceptance of the risk or the hazard assumed by the insurer. The policy was dated July 13, 1937, and mailed from appellant's home office at Omaha, Nebraska, to its branch office at Detroit, Michigan, and was shortly thereafter delivered by its local agent to the insured, who died September 7, 1937.

Appellee, as beneficiary, sued for and obtained a verdict and judgment for $5,610. Appellant, complaining of the overruling of its motion for a directed verdict made at the close of all the evidence, insists that the case should not have gone to the jury. It urges three points for reversal; (1) that upon the undisputed evidence, the insured was not in good health when he applied for and received the policy in question and that he made misrepresentations materially affecting the risk and hazard assumed by the insurer; (2) failure of the beneficiary to furnish written proofs of loss pursuant to the provisions of the policy; (3) that the death of the insured did not arise from bodily injuries due to accident.

Conceding that the evidence must be viewed in the light most favorable to appellee's claim and that an instructed verdict in the case would be improper unless reasonable minds were without conflict as to the conclusions to be drawn from the evidence so viewed, appellant urges upon us that it is all one way.

The application in question was taken July 12, 1937, by appellant's agent, Sidney Stolsky, who testified that at that time the insured looked well and had no apparent illness.

Dr. Frederick L. Sperry, a witness for appellant, testified that he was the insured's family physician and that he first treated him professionally on July 9, 1937, at which time he was suffering from a sty on the upper lid of the left eye, a slight infection in the surface of the little finger of his right hand and a swelling and soreness of the gums. On July 10, 1937, he took a history of the eye and finger infection and insured returned to his office on July 13, 1937, at which time he gave him a thorough physical examination and took specimens of his blood and urine for analyses. On July 16, 1937, he found the insured suffering from myelogenous leukemia, a fatal disease.

On July 23, 1937, the insured, while getting on a street car in Detroit, bruised and broke the skin on his right leg from which an infection resulted and for which he was treated by Dr. Sperry until August 3, 1937, when he was removed to the Women's & Children's Hospital at Toledo, Ohio, where the physician in charge diagnosed his illness as myelogenous leukemia, during the treatment of which he was given two blood transfusions. He remained in the Toledo hospital until August 27, 1937, when he was removed to the Henry Ford Hospital at Detroit, Michigan, in a critical condition. There he was further treated for leukemia by additional blood transfusions, the last of which was given on September 5, 1937, at which time he developed an infraction in the right lung due to either a thrombus or embolus and died on September 7, 1937.

On cross examination, Dr. Sperry testified that he checked the insured's blood count on July 16th and July 23rd 1937, and on July 28, 1937, it was again checked at a commercial laboratory without his presence but at his instance. On re-direct examination he testified that he probably took the insured to the laboratory; the technician testified that he did bring him there. The doctor's ledger showed no charge for professional services on July 28, but did show one for August 30, 1937, for services at the Henry Ford Hospital which, on cross examination, he admitted was a non-professional visit. He testified he saw the deceased on August 25, 1937, at his home, but not in Toledo, and his ledger showed a charge for an alleged house call on that date. On this same date, Dr. Sperry wrote a letter to the Ford Hospital at Detroit, in which he stated that appellee would bring her husband there for treatment and that he had theretofore seen him professionally, first for a gum hypertrophy, leg injury and later for acute myelogenous leukemia which was discovered during the course of treatment for the other ailments. He stated the patient had theretofore been treated with deep therapy and blood transfusions.

He also testified that after he had treated the insured for the finger infection and sty, he noticed an abrasion on his shin but made no notation of it in his record because it was so trivial. On September 1, 1937, Dr.

Sperry prepared a written statement in support of the insured's application for accident benefits under the policy in question and stated that he first treated him on July 23 at his office for an injury to the shin of his right leg on which there was an abrasion with infection, also laceration and infection of the right hand, and of the upper lid of the left eye. He stated the injury occurred July 20, 1937, while the insured was getting on a street car and that he had opened the infected areas on July 23, 1937. He also stated that the cause or extent of injury or the period of disability therefrom was not influenced by any disease, impairment or deformity, and that he had given insured four treatments for the injury July 23, 25, and that no further medical attention was necessary for it.

Dr. James E. Davis, an experienced pathologist who had not seen or treated the insured, testified that in his opinion it was possible and probable that the leukemia, from which insured died, resulted from the injury to his leg if he had not theretofore suffered from it but if he had the disease at the time of the injury, it would have aggravated it. He also stated that leukemia in a fatal form could develop suddenly.

Dr. Louis J. Morand, another physician who had not treated the insured, testified that in his opinion, leukemia could have been caused from the injury to his leg and death hastened by blood transfusions.

Dr. Louis J. Steiner, who treated the insured at the Ford Hospital, testified that in his opinion the accident sustained by the insured had no connection with his contraction of leukemia and also that the blood transfusions in no way hastened or contributed to his death.

Dr. John W. Keys, who treated insured at the Ford Hospital, testified that it was common for a person suffering from acute myelogenous leukemia to have an infraction of the lung and that blood transfusions could in no way produce it.

Upon these facts, the appellant insists that it was entitled to a directed verdict. The appellee concedes the point, if the testimony of Dr. Sperry is to be believed, but she insists that his contradictory statements and the facts and circumstances surrounding his testimony tend to impeach him as a witness and to discredit his statements and create doubt of his truthfulness which required the court to submit his credibility as a witness to the jury.

■ A directed verdict may not be based on the truthfulness of a witness' testimony if there be anything in the circumstances or surroundings that would impeach him or discredit his statements or if there be present facts tending to cast doubt on his truthfulness. Druse v. Wheeler, 26 Mich. 189.

■■ A mere scintilla of evidence is not enough to require the submission of an issue to a jury. In every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly find a verdict for the party producing it upon which the burden of proof is imposed. It is the trial court's duty to direct a verdict where the evidence is undisputed or where, though conflicting or contradictory, it is so conclusive that the court, in the exercise of a sound judicial discretion, should set aside a verdict in opposition to it. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U.S. 727, 733, 8 S.Ct. 266, 31 L.Ed. 287; West v. Detroit Terminal Railroad, 229 Mich. 590, 201 N.W. 955; New Amsterdam Casualty Co. v. Farmers' Co-op. Union, 8 Cir., 2 F.2d 214.

Dr. Sperry was a disinterested witness and his so-called contradictions are unsubstantial and on immaterial matters. His statements with reference to insured's accident were made upon a blank furnished him for that purpose by appellant's agent and the questions related exclusively to the accident. As we view his evidence, there is nothing in the circumstances or surroundings that would tend to impeach him or cast doubt on his truthfulness when testifying to the material facts in the case. His evidence is thoroughly corroborated by the course of the insured's illness and the testimony of other physicians and surgeons. There is not a fact or circumstance in the case which tends to raise a doubt as to the truth of his testimony that he was insured's family physician and treated him as early as July 9, 1937, and found him suffering from myelogenous leukemia as early as July 16, 1937.

■ The evidence conclusively shows that the insured did answer falsely some of the material questions in the application for the policy. It is immaterial as to whether they were knowingly made. Misstatements

made in good faith which materially affect acceptance of the risk, constitute sufficient grounds for avoidance of the policy. North American Life Insurance Co. v. Jones, 287 Mich. 298, 283 N.W. 587.

█ Appellant's motion should have been granted and, having reached this conclusion, it is unnecessary to decide the other questions urged by it. For the error in refusing to peremptorily instruct the jury, the judgment is reversed and the cause remanded for a new trial and for further proceedings not inconsistent with this opinion.

Reversed and remanded.