ANDERSON, RECEIVER, *v.* YUNGKAU,
EXECUTOR, ET AL.

No. 87. Argued December 19, 20, 1946.—Decided January 13, 1947.

*Robert S. Marx* argued the cause for petitioner. With him on the brief were *Frank E. Wood, Harry Kasfir* and *Edward M. Brown.*

*LeWright Browning* argued the cause and filed a brief for respondents. *William J. Price, Henry G. Sandifer* and *George W. Luedeke* filed a brief for Henry G. Sandifer, and *H. R. Dysard* filed a brief for Yungkau et al., respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

These are seven cases in which petitioner sued to recover stock assessments from shareholders of the Banco Kentucky Co. They were started in 1936 in the Eastern District of Kentucky and were stayed by agreement while the principal case upon which these depended, *Anderson* v. *Abbott,* 321 U. S. 349, wended its way through the courts. In the latter case we sustained the liability of the shareholders of Banco for the stock assessment. That was in 1944. During the time *Anderson* v. *Abbott* was being litigated, the shareholders involved in the present litigation died and respondents became executors of their estates. Through no lack of diligence,[1] petitioner failed to learn of these facts until more than two years later. Upon learning of them he promptly moved to revive the actions against the representatives of the decedents. The District Court, following *Anderson* v. *Brady,* 1 F. R. D. 589, denied the motions for revivor and granted motions of the executors to dismiss. The Circuit Court of Appeals affirmed by a divided vote. 153 F. 2d 685. The case is here on a petition for a writ of certiorari which we granted because the case presented an important problem in the construction of the Rules of Civil Procedure.[2]

---

[1] Petitioner brought actions against approximately 5,000 shareholders scattered throughout the United States and some in foreign countries. During the progress of the litigation some changed their residences. And it was stipulated that petitioner, with a limited staff, could not during this time keep up with the changes of residence or deaths of defendants.

[2] Cf. *Ainsworth* v. *Gill Glass & Fixture Co.,* 104 F. 2d 83, with *Burke* v. *Canfield,* 72 App. D. C. 127, 111 F. 2d 526, and *Mutual Benefit Health & Accident Assn.* v. *Snyder,* 109 F. 2d 469.

The case involves a reconciliation of Rule 25 (a) and Rule 6 (b). So far as material here, Rule 25 (a) provides:

> "If a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party."

And the relevant part of Rule 6 (b) reads:

> "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion . . . (2) upon motion permit the act to be done after the expiration of the specified period where the failure to act was the result of excusable neglect; but it may not enlarge the period for taking any action under Rule 59, except as stated in subdivision (c) thereof, or the period for taking an appeal as provided by law."

It is said that since by Rule 25 (a) substitution may be made within two years after the death of a party, substitution is, within the meaning of Rule 6 (b), an act "allowed" to be done "within a specified time" which the court may on a showing of "excusable neglect" permit to be done after the two-year period. That argument is reinforced by reliance on the provision in Rule 6 (b) which grants but two exceptions to the power of enlargement of time. Since Rule 25 (a) is not included in the exceptions, it is argued that the time allowed by that rule may be enlarged under Rule 6 (b). And it is pointed out that the facts of the present cases establish that the failure of the receiver to act within the two-year period was the result of "excusable neglect," [3] thus giving the District Court discretion to allow the substitution under Rule 6 (b).

---

[3] See note 1, *supra.*

We agree, however, with the Circuit Court of Appeals. Rule 25 (a) is based in part on 28 U. S. C. § 778, 42 Stat. 352, which limited the power of substitution to two years from the death of a party.[4]  And even within that two-year period substitution could not be made unless the executor or administrator was served "before final settlement and distribution of the estate."  That statute, like other statutes of limitations, was a statute of repose.  It was designed to keep short the time within which actions might be revived so that the closing and distribution of estates might not be interminably delayed.[5]  That policy is reflected in Rule 25 (a).  Even within the two-year period substitution is not a matter of right; the court "may" order substitution but it is under no duty to do so.  Under the Rule, as under the statute, the settlement and distribution of the estate might be so far advanced as to warrant a denial of the motion for substitution within the two-year period.  In contrast to the discretion of the court to order substitution within the two-year period is the provision of Rule 25 (a) that if substitution is not made within that time the action "shall be dismissed" as to the deceased. The word "shall" is ordinarily "the language of command." *Escoe* v. *Zerbst,* 295 U. S. 490, 493.  And when the same Rule uses both "may" and "shall," the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory.  See *United States* v. *Thoman,* 156 U. S. 353, 360.

Thus, as stated by the Circuit Court of Appeals, Rule 25 (a) operates both as a statute of limitations upon revivor and as a mandate to the court to dismiss an action not revived within the two-year period.  Rule 6 (b) relates to acts required or allowed to be done by parties to an action and permits the court to afford relief to a party for

---

[4] But see *Baltimore & Ohio R. Co.* v. *Joy,* 173 U. S. 226; *Winslow* v. *Domestic Engineering Co.,* 20 F. Supp. 578.

[5] And see H. Rep. No. 429, 67th Cong., 1st Sess., p. 2.

his failure to act within the prescribed time limits. There would be more force in petitioner's argument if Rule 25 (a) had, without more, set a two-year period within which substitution might be made. But Rule 25 (a) does not stop there. It directs the court to dismiss the action if substitution has not been made within that time. That is action required of the court, not of a party. And Rule 6 (b) should not be construed to override an express direction of action to be taken by the court. See *Wallace* v. *United States,* 142 F. 2d 240, 244.

Reasons of policy support this construction. It is, to be sure, stipulated that in five of the present cases the estate is "still open and undistributed"; in one it is "still open"; in another it has been distributed. At least where an estate is ready to be closed or where there has already been a distribution, revivor may work unfairness and be disruptive of orderly and expeditious administration of estates. But it is not enough to say that if Rule 6 (b) and Rule 25 (a) are construed to permit substitution after the two-year period, the court need not allow it where unfairness or prejudice would result. For the normal policy of a statute of limitations is to close the door—finally, not qualifiedly or conditionally. The federal law embodied in Rule 25 (a) has a direct impact on the probate of estates in the state courts. It should not be construed to be more disruptive of prompt and orderly probate administration in those courts than its language makes necessary.

*Affirmed.*

The Chief Justice and Mr. Justice Reed took no part in the consideration or decision of this case.

Mr. Justice Rutledge, dissenting.

Rule 25 (a) provides:

"If a party dies and the claim is not thereby extinguished, the court within 2 years after the death

> may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party. . . ."

I agree that the rule confers discretion to order substitution of parties, hence in appropriate circumstances to refuse to do so and thereupon to dismiss the action. But I do not think the discretion ends with the two-year period.[1] The rule is not worded to require this and ascribing such a construction to it brings it into collision with the express terms and the policy of Rule 6 (b). The difference made by expiration of the period is not to convert the rule's command for dismissal from a discretionary to a mandatory one. It is merely to narrow the conditions under which the discretionary power shall be exercised.[2]

---

[1] The Notes of the Advisory Committee on the original Federal Rules state that Rule 25 (a) "is based upon Equity Rule 45 (Death of Party—Revivor) and U. S. C., Title 28, § 778 (Death of parties; substitution of executor or administrator)." Prior to 1921 what is now 28 U. S. C. § 778 did not apply to suits in equity. Equity Rule 45, with its provision that a motion for substitution might be made within "a reasonable time," was governing. But by 42 Stat. 352 it was provided that the revival of equity suits should be by *scire facias,* and a two-year statute of limitations was made applicable. See 28 U. S. C. A. (1928) § 774 to End, p. 99, "Compiler's note."

However, in general the Rules were intended to supersede rather than incorporate previously existing statutory or other provisions, where the wording was different; and the committee's statement that Rule 25 (a) "is based upon Equity Rule 45" as well as 28 U. S. C. § 778, together with the different wording of the rule and that section, may indicate that the committee either considered Equity Rule 45 still effective, for which there seems to have been some judicial authority, see *Electropure Sales Corp.* v. *Anglim,* 21 F. Supp. 451, 452; *Gaskins* v. *Bonfils,* 4 F. Supp. 547, 550–551, or intended to adopt it in substance as the basis and effect of Rule 25 (a). Had the purpose been to incorporate 28 U. S. C. § 778, there would have been no necessity for changing the wording, except in relation to the *scire facias* procedure. See note 10 *infra* and text.

[2] See text at note 6 *infra.*

I find no basis for thinking that the time limitation prescribed by the first sentence of Rule 25 (a) was intended to be treated differently than any other prescribed by the Rules, except those concerning which they expressly forbid enlargement. The committee which drafted the Rules was highly competent, spent years in exacting preparation, and was thoroughly cognizant of what it intended to propose concerning time limitations. Meticulous attention was given to them. By count the index shows 134 references to provisions relating to time for taking various actions.

The committee knew their volume and variety. It was conscious also of the many difficulties and injustices which had arisen by virtue of rigid time limitations, whether laid by statute, rule of court, or judicial decision.[3] The deliberately chosen policy was to do away with those rigidities and to substitute sound discretionary limitations, except as otherwise expressly directed.[4] This policy was stated clearly, fully and I think accurately in the Rules themselves by the addition of Rule 6, of which subdivision (b) is expressly applicable here.

By this unambiguous declaration it was provided that "the court for cause shown may, at any time in its discretion . . . (2) upon motion permit the act to be done after the expiration of the specified period where the failure to

---

[3] See Rules 6 (b), (c) and 60, all of which have received wide comment. See also notes 4 and 10.

[4] See Proceedings of the Institute on the Federal Rules of Civil Procedure at Washington, D. C., and of the Symposium at New York City (1939) 83–84; Proceedings of the Institute on the Federal Rules of Civil Procedure at Cleveland (1938) 210–211; Hearings before the Committee on the Judiciary of the House of Representatives with Regard to the Rules of Civil Procedure for the District Courts of the United States, 75th Cong., 3d Sess., 60.

act was the result of excusable neglect." [5]  This was applicable in any situation "when by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified period," with two and only two exceptions. These were to forbid enlarging the time for taking any action under Rule 59, except as stated in subdivision (c) thereof, and the period for taking appeal. Rule 73. The forbidden enlargements under Rule 59 involve matters concerning the granting of new trials.

In those two respects and in them alone the time limitation was made, and was intended to be, "jurisdictional." For the rest, the courts were to exercise discretion. It is to be emphasized that the limits of discretion fixed for enlarging time after the prescribed periods were narrowed by requiring that enlargement be made, if at all, only upon motion and only upon showing that the failure to act within time was due to excusable neglect.[6]

---

[5] The rule in full is as follows:

"Rule 6 (b) ENLARGEMENT. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion (1) with or without motion or notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion permit the act to be done after the expiration of the specified period where the failure to act was the result of excusable neglect; but it may not enlarge the period for taking any action under Rule 59, except as stated in subdivision (c) thereof, or the period for taking an appeal as provided by law."

[6] See note 5. If Rule 25 (a) constitutes in effect a statute of limitations, as the Court holds, it may be inquired whether, even upon proper application made within the two-year period under Rule 6 (b) (1), see note 5, the Court could enlarge the time by extension, as seems clearly contemplated by the clause "or as extended by a previous order."

Those limitations were applicable here, in my opinion, and admittedly they were satisfied.

Rule 6, including subdivisions (b) and (c), was thus a general and a carefully drawn declaration of paramount policy for the application of limitations of time. It made no distinction between rules governing actions to be taken by the parties and actions to be taken by the courts.[7] It made no exceptions other than the two expressly set forth. This Court approved the rule as drawn and Congress allowed it to become law without modification. To assume or to rule that additional exceptions were intended is to assume that the committee, the Court and Congress overlooked others which should have been stated in Rule 6 (b) or did not intend the declared policy of that section to be effective fully according to its terms. I am unable to accept either conclusion. If we may make an additional exception forbidding enlargement of time in cases covered by Rule 25 (a) in the face of the express provision of Rule 6 (b), there is no reason why others may not also be made, and thus the salutary policy of Rule 6 (b) be defeated.[8]

---

[7] See note 5. The rules are replete with provisions for action to be taken within specified periods by the courts upon their own initiative as well as upon motion by the parties. Rule 6 (b) is itself an illustration. Certainly it cannot be said, in view of the rule's comprehensive language, that it applies only to actions to be taken by the parties and has no application to the large number of instances in which limitations of time are imposed for action to be taken by the courts. Such a construction would bring back many of the evils the Rules were designed to avoid. It would defeat perhaps as many of the literal and intended applications of Rule 6 (b) as it would preserve.

Rule 6 (c) is as follows: "The period of time provided for the doing of any act or the taking of any proceeding is not affected or limited by the expiration of a term of court. The expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which has been pending before it."

[8] The Advisory Committee in its Report of Proposed Amendments to the Rules of Civil Procedure (1946) 2–6 points out that District Courts and Circuit Courts of Appeals in some cases have refused to

The considerations of policy said to support the decision would be grounds either for the district court's consideration in determining whether to deny enlargement in the exercise of its discretion or for amendment of Rule 6 (b) so as to exclude such cases as this.[9]  They are not a basis in my opinion for changing that rule by interpretation or for opening the door to further restrictive amendments of Rule 6 (b) in this respect by that process.  If this is to be done, it should be by the prescribed rule-making procedure.  Indeed the Advisory Committee, in the recently proposed amendments to the rule, has recommended that Rule 25 (a) be rephrased so as to eliminate any question that the rule has the meaning ascribed to it in this opinion.  And its note appended to the recommendation states that the purpose is to guard against injustices likely to result from a flat two-year limitation.[10]  In my opinion

---

apply Rule 6 (b) to other Rules as well as Rule 25 (a), see, *e. g.*, *Wallace* v. *United States,* 142 F. 2d 240; *Reed* v. *South Atlantic S. S. Co.,* 2 F. R. D. 475; *Mutual Benefit Health & Accident Assn.* v. *Snyder,* 109 F. 2d 469; cf. *Burke* v. *Canfield,* 72 App. D. C. 127, 111 F. 2d 526, though other cases have ruled the other way.  See, *e. g.*, *Schram* v. *O'Connor,* 2 F. R. D. 192, 194; *Ainsworth* v. *Gill Glass & Fixture Co.,* 104 F. 2d 83.

[9] But see note 10 and text.

[10] Report of Proposed Amendments to Rules of Civil Procedure for the District Courts of the United States (1946) 31–32.

The revision of Rule 25 (a) recommended by the committee reads as follows, the revised matter appearing in italics: "If a party dies and the claim is not thereby extinguished, the court *upon application made* within 2 years after the death *shall* order substitution of the proper parties.  *If the application is made after 2 years the court may order substitution but only upon the showing of a reasonable excuse for failure to apply within that period.*  If substitution is not so made, the action shall be dismissed as to the deceased party. . . ."

The committee appends the following comment: "This amendment guards against possible injustice in a case where there is some reasonable excuse for not applying for substitution within the 2-year period. It has been held that the court has no power to permit substitution after the expiration of the 2-year limit, irrespective of the circum-

the committee's action and the reasons given for it confirm, rather than disavow, the section's originally intended meaning.

This case is an illustration of the kinds of injustice the committee sought to avoid. And the considerations of policy are not altogether one-sided. The effect of the decision in such a case as this is not only to throw an admittedly impossible burden upon the party seeking without neglect to enforce his cause of action. It is also to throw upon other parties, equally helpless, a heavier burden of financial loss, whether by depriving them of rightful recovery or by forcing them, in some instances at least, to bear a larger share of the common responsibility.[11]

---

stances. *Winkelman* v. *General Motors Corp.* (S. D. N. Y. 1939) 30 F. Supp. 112; *Anderson* v. *Brady* (E. D. Ky. 1941) 4 Fed. Rules Serv. 25a.1, Case 1; *Photometric Products Corp.* v. *Radtke* (S. D. N. Y. 1946) 9 Fed. Rules Serv. 25a.3, Case 1; *Anderson* v. *Yungkau* (C. C. A. 6th, 1946) 153 F. (2d) 685, cert. granted (1946) 66 S. Ct. 1025."

In its comment relating to Rule 6´(b), pp. 2–3, the committee states: "In a number of cases the effect of Rule 6 (b) on the time limitations of these rules has been considered. Certainly the rule is susceptible of the interpretation that the court is given the power in its discretion to relieve a party from failure to act within the times specified in any of these other rules, with only the exceptions stated in Rule 6 (b), and in some cases the rule has been so construed."

"With regard to Rule 25 (a) for substitution, it was held in *Anderson* v. *Brady* (E. D. Ky. 1941) 4 Fed. Rules Service 25a.1, Case 1, and in *Anderson* v. *Yungkau* (C. C. A. 6th, 1946) 153 F. (2d) 685, cert. granted (1946) 66 S. Ct. 1025, that under Rule 6 (b) the court had no authority to allow substitution of parties after the expiration of the limit fixed in Rule 25 (a)."

[11] The statutory liability of shareholders in national banking associations was created by 12 U. S. C. §§ 63, 64. By § 63 the shareholder was made "individually responsible, *equally and ratably and not one for another,* for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par

In my opinion the judgment should be reversed and the cause remanded to the District Court for the exercise of the discretion given by the Rules.

MR. JUSTICE BURTON joins in this dissent.

value thereof, in addition to the amount invested in such shares . . . ." (Emphasis added.) By § 64 the shareholder was made "individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock."

To what extent § 64 may have modified § 63 has been disputed. See *American Trust Co.* v. *Grut,* 80 F. 2d 155; *First Nat. Bank* v. *First Nat. Bank,* 14 F. 2d 129. But in *Anderson* v. *Abbott* we said: "It is sufficient at this time to state that the liability of the shareholders of Banco would be measured by the number of shares of stock of the Bank, whether several or only fractional, represented by each share of stock of Banco; and that the assessment liability of each share of stock of Banco would be a like proportion of the assessment liability of the shares of the Bank represented by the former." 321 U. S. 349, 368–369. And in *Frank* v. *Giesy,* 117 F. 2d 122, 125, it was held that the omission in § 64 of the pro rata limitation of § 63 was intended to strengthen the position of creditors, making each shareholder's liability several and fully enforceable though others go free. In *First Nat. Bank* v. *First Nat. Bank, supra,* the shareholder made to pay was held entitled to enforce contribution against others not proceeded against. The shareholder's liability is secondary only, *McClaine* v. *Rankin,* 197 U. S. 154, 161; *First National Bank* v. *Nichols,* 294 Mass. 173, 181, 200 N. E. 869, and though one is not relieved either wholly or in part because others are not compelled to pay, neither is any required to pay more proportionately than is needed from the fund actually collected to discharge the bank's obligations. *Bank of Ware Shoals* v. *Martin,* 17 F. Supp. 61, 63. The liability is not a debt but is one merely assuring payment of the bank's obligations. *McClaine* v. *Rankin, supra.*

The Court's decision therefore in effect cuts off any possibility shareholders forced to pay may have for reduction of the amounts of their payments either through the receiver's enforcement of the liability directly against decedent shareholders' estates or by seeking contribution from them after the two-year period. And this is done regardless of the estate's comparative ability to pay, of whether it is in

494

---

an early or a late stage of administration, and of when the death occurs. Thus, in these cases, only one estate has been closed and one other is nearing that stage; but so far as appears the other five remain open and undistributed.

The suits were begun in 1936. Eight years were taken up for litigation of the principal issue of liability in *Anderson* v. *Abbott, supra.* That liability having been established after so long a time, now eleven years after the suits were instituted this decision comes to nullify it in substantial part and effect. The result, in my opinion, is quite as much to make the protection afforded by these statutes turn on accidents of life and death in some instances, perhaps in many, at variance with the nature of the liability and its fair administration, as other distinctions were said in the *Anderson* case to make the protection turn on irrelevant accidents. 321 U. S. at 367.