## LONG *v.* INCOME GUARANTY COMPANY.

1. INSURANCE—APPLICATION—PREVIOUS ILLNESS—EVIDENCE.
   Testimony did not clearly preponderate in opposite direction from finding of trial court that insurer had failed to establish that insured had a coronary thrombosis about 2 years before applying for hospital indemnity policy at age 77, in view of best evidence afforded by electrocardiograms taken during 3-week period of treatment at hospital and in which no coronary was shown.

2. PLEADING — AMENDMENT — DISCRETION OF COURT — INSURANCE — CORONARY THROMBOSIS—OTHER SERIOUS ILLNESS.
   Denial of defendant insurer's motion to amend answer in action to recover indemnity for hospital expenses so as to permit allegation that there was a serious previous illness to void the policy whether it was coronary thrombosis or of undetermined cause, made at conclusion of testimony, was not an abuse of discretion, where case had been tried on theory that the previous illness was a coronary thrombosis and granting the motion would make a different case.

Appeal from Wexford; Neal (Max E.), J.   Submitted June 6, 1951.   (Docket No. 31, Calendar No. 45,150.)   Decided September 5, 1951.

Action by Lewis Henry Long against Income Guaranty Company on an insurance policy.   Judgment for plaintiff.   Defendant appeals.   Affirmed.

*Frank H. Miltner,* for plaintiff.

*Harrington, Waer, Cary & Servaas,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur, Insurance §§ 1467, 1483, 1512.
[2] 29 Am Jur, Insurance § 1423; 41 Am Jur, Pleading §§ 293, 304.

Boyles, J. Plaintiff sued the defendant insurance company to recover $628 claimed to be due plaintiff for hospital expenditures, under a policy issued by the company to indemnify plaintiff for such expense. The company defended on the ground (set up as affirmative matter in its answer) as follows:

"That the plaintiff herein had within about 2 years prior to the application for a policy, * * * a coronary thrombosis; * * * that the said answers made by plaintiff in his application for a policy failed to state that he had suffered a coronary thrombosis, * * * that such failure to make such disclosure by the plaintiff materially affected the acceptance of the risk * * * that had the plaintiff made a true disclosure of his prior treatment for coronary thrombosis, the defendant would never have insured him."

The case was tried by the court without a jury and the court held that the defendant had failed to establish that plaintiff had an earlier attack of coronary thrombosis. From the judgment entered for plaintiff, the defendant appeals.

At the time plaintiff signed the application for the policy in March, 1948, plaintiff was 77 years of age. In February, 1946, plaintiff had been hospitalized for 23 days. The crucial issue of fact submitted to the trial court was, and still is, whether at that time he had a coronary thrombosis. The company's defense is based on a claim that plaintiff's answers to the following questions in the application were not true:

"8. (a) Are you in a sound and healthy condition, mentally and physically, and are your habits of life temperate?—(A) Yes.
"9. Have you had medical or surgical advice or treatment or any departure from good health within the past several years; if so, state when, cause and duration?—(A) Dr. Fred Smith of Lake City, Mich.,

treated for overexertion.  Hospitalized about 3 weeks 1946."

The plaintiff, testifying in regard to his answer to the first question (8[a]), said:

"I answered that question 'Yes,' and when I say 'it is,' I mean I was in sound health."

The defendant claims that plaintiff was not in sound health when the application was signed in March, 1948, due to the fact that plaintiff had been hospitalized for a coronary thrombosis 2 years before.  There seems to be no claim that plaintiff was not in sound health in March, 1948, due to any other causes or on account of any other reason than that; and there is no proof to that effect.  Consequently, defendant's claim centers mainly around question 9.  Plaintiff was hospitalized for 23 days in February, 1946.  He testified:

"*Q.* What type of overexertion were you hospitalized for?
"*A.* The question means how did it act on me or what happened to me?
"*Q.* What did you do that was overexertion?
"*A.* I shoveled snow.  I was working around the Ford garage.
"*Q.* Here in Cadillac?
"*A.* In Lake City.
"*Q.* After that snow shoveling incident you went to the hospital the day after, is that correct?
"*A.* That's right.
(Witness continues)
"I say in this application I was 'treated for overexertion.'  I knew that I was treated for overexertion—worked hard, and that I fainted, and that's what the doctor told me.  The doctor told me it was caused from overexertion.  He told me that, I don't know just when.  I asked him.  I didn't know what was the matter with me, so I asked him.  Only I knew I was sick.  Mr. Heazlit (defendant's agent

who took the application) didn't ask me any more questions about that? I told him what caused the overexertion. He didn't ask me any medical terms about it. He didn't ask me anything I didn't tell him, no. I answered all of his questions. No, I didn't make any statement in this application that is not true. They're all the truth. I don't aim to do that."

The hospital records were received in evidence, and Dr. Fred Smith, who attended the plaintiff during his hospitalization, testified at length. During hospitalization, 2 electrocardiograms (EKG's) were taken. They are the best evidence as to plaintiff's cardiac condition at that time, and state:

"Conclusion: (Taken February 7) * * * This is an abnormal electrocardiogram suggesting coronary insufficiency, probably on an arteriosclerotic basis. To rule out a possible recent coronary occlusion with myocardial infarction, a follow-up EKG should be taken in a few days."

"Conclusion: (Taken February 23) * * * This is an abnormal electrocardiogram suggesting coronary insufficiency, probably on an arteriosclerotic basis. Comparison of the EKG with the report on a previous one, taken 2–7–1946, shows no significant changes. The auricular and ventricular extrasystoles seen in the earlier gram have disappeared. A recent coronary occlusion with myocardial infarction is unlikely."

The hospital record of that hospitalization, signed by Dr. Smith, shows:

"FINAL DIAGNOSIS

"Result Cause of Episode Undetermined
      EKG report shows no coronary. * * *
                    "FRED R. SMITH, MD"

It would be of little benefit to the profession to recite in detail the testimony of Dr. Smith, on differ-

ent parts of which counsel for each of the parties rely. The trial court found that the defendant had failed to establish that plaintiff had a coronary thrombosis in 1946. The testimony does not clearly preponderate in the opposite direction.

In August, 1948, 5 months after the policy was issued, plaintiff was again hospitalized. There is no proof of any repetition of the cardiac "episode" of February, 1946, during the interim between that date and August, 1948, at which time Dr. Smith again attended the plaintiff. The hospital record of plaintiff's hospitalization in August, 1948, states:

"Final Diagnosis

"Result    (1)  Cerebral Arteriosclerosis
           (2)  Cerebral Hemorrhage
           (3)  ~~Bed Sores~~ Decubitus
                          Ulcers
           "Fred R. Smith, MD"

Appellant relies much on a statement furnished it by the hospital before suit was started, giving plaintiff's past history: "Had a coronary thrombosis about 2 years ago." However, this was changed later by Dr. Smith to conform to the hospital records and his diagnosis when plaintiff was then in the hospital, as follows: "Had a *possible* coronary thrombosis about 2 years ago—although EKG at that time was negative." The final diagnosis shown by the hospital records on each occasion, signed by Dr. Smith, negatives the conclusion that the plaintiff at either time had a coronary thrombosis.

From a review of the entire record we are in accord with the conclusion of the trial judge, who found that it had not been established that plaintiff had a coronary thrombosis in 1946. The testimony does not preponderate in the opposite direction. Appellant relies for reversal on *North American Life Assurance Co.* v. *Jones,* 287 Mich 298. In that

case the Court affirmed a decree cancelling an insurance policy on the ground of fraud in making representations in the application. The facts justified the conclusion and the case is not at all similar, in that regard, to the instant case.

After the trial court had concluded the taking of testimony in the case at bar, the court announced that the only question of fact to be determined was whether the plaintiff had had a coronary thrombosis in 1946, the only affirmative defense pleaded by the defendant. Counsel for defendant then moved orally for permission to amend the answer, "to permit the allegation that there was a serious illness to void the policy whether it was coronary thrombosis or whether it was, as Dr. Smith I believe stated, 'cause undetermined.' "

The court ruled that the case had been tried on the theory presented by the defendant and covered by defendant's counsel in his opening statement, that the motion would make a different case, and denied the motion. The granting or denial of the motion rested in the sound discretion of the court, and it was not abused.

Affirmed.

Reid, C. J., and North, Dethmers, Butzel, Carr, Bushnell, and Sharpe, JJ., concurred.