**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0815n.06
Filed: November 7, 2006

No. 05-4287

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MOHAMMAD MAHMOUD AL-BANNA, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT and MOORE, Circuit Judges; and COLLIER,[*] District Judge

**MERRITT, Circuit Judge.**   Defendant Mohammad Mahmoud Al-Banna ("Al-Banna") appeals the District Court's decisions to "denaturalize" him and deny his motion to suppress evidence.  Specifically, Al-Banna entered a conditional plea of guilty to naturalization fraud, in violation of Title 18, United States Code, Section 1425(a), and to making false statements to procure naturalization in violation of Title 18, U.S.C. Section 1015(a).  The District Court subsequently sentenced him to a prison term of one month, followed by three years of supervised release including three months of community confinement.  The court also ordered his certificate of naturalization

---

[*]The Honorable Curtis Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

revoked pursuant to 8 U.S.C. § 1451(e) because it was obtained based on fraudulent statements and circumstances.

The District Court properly interpreted the mandatory language of 8 U.S.C. § 1451(e) that the Court "shall" revoke, cancel, or declare void any certificate of citizenship that is obtained through fraud. The District Court also properly denied Al-Banna's motion to suppress evidence. His interview was non-custodial in nature; he was free to leave at all times and was never placed under arrest. Even if the interview were custodial, Al-Banna's constitutional rights were honored because the Agents twice informed him of his *Miranda* rights.

### FACTS

On July 26, 2004, Al-Banna, while still a citizen of Jordan and an alien, knowingly lied about his criminal record during an interview with the U.S. Citizenship and Immigration Service Office. He told the interviewer that he had never been "cited, charged, or convicted on criminal charges, other than traffic offenses." He also made false statements on his naturalization application Form N-400. Al-Banna made these false statements even though he knew that he had actually been convicted of Possession of Marijuana in April of 2004, in Rocky River Municipal Court and cited on June 17, 2004, in the City of Cleveland with another charge of Possession of Marijuana.

On October 15, 2004, Al-Banna made another false statement on Form N-445 on the date of his naturalization. When Al-Banna was asked on this form whether he had ever been "arrested, cited charged, indicted, convicted or imprisoned for breaking or violating any law or ordinance, including traffic violations," he answered again in the negative. Once again, however, Al-Banna had actually

been arrested for drug trafficking in Cuyahoga County on September 1, 2004. He was later convicted of that charge after his naturalization.

On March 2, 2005, Special Agent Patrick Sweeney and Agent Mark Gollon of Immigration and Customs Enforcement approached Al-Banna while he was having a meeting with his Probation Officer in Cleveland, Ohio. The agents identified themselves to Al-Banna and asked if he would be willing to talk to them about his immigration history. The agents were dressed in plain clothes and displayed no weapons.

Al-Banna was immediately advised of his constitutional rights by Agent Sweeney. Al-Banna then acknowledged the rights and waived them. There was no language barrier as Al-Banna speaks English. During the interview, Al-Banna freely acknowledged that he had been arrested on multiple occasions. Following this interview, Al-Banna was offered an opportunity to provide a sworn statement. He agreed and Agent Sweeney again *mirandized* him. He acknowledged that he understood his rights and that he did not want an attorney, and that he was willing to answer questions. He was thereafter placed under an oath of affirmation. At no point during the interview did Al-Banna express to the agents that he was confused.

**DISCUSSION**

**A. The Decision to Denaturalize Al-Banna Pursuant to 8 U.S.C. § 1451(e)**

Al-Banna first argues that the word "shall" as used in 8 U.S.C. § 1451(e) is a *permissive* term. In fact, under the defendant's suggested statutory construction, the entire section should be read as permissive and, therefore, he should not be denaturalized "per se." The statute reads in relevant part:

> When a person shall be convicted under section 1425 of title 18 of the United States Code of knowingly procuring naturalization in violation of law, the court in which such conviction is had <u>shall</u> thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and <u>shall</u> declare the certificate of naturalization of such person to be canceled. Jurisdiction is hereby conferred on the courts having jurisdiction of the trial of such offense to make such adjudication.

8 U.S.C. § 1451(e) (emphasis added).

The drafters of this section of the United States Code undoubtedly understood the difference between the permissive term "may" and the mandatory term "shall." They use the permissive term "may" five times and the mandatory term "shall" more than 20 times. The Supreme Court has held, "when the same rule uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense — the one act being permissive, and the other mandatory." *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947).

In a similar Supreme Court case involving a defendant arguing that the Court should consider various factors before revoking his fraudulently obtained citizenship, the Court held that, "the district court lacks equitable discretion to refrain from entering a judgment of denaturalization against a naturalized citizen whose citizenship was procured illegally or by willful misrepresentation of material facts." *Fedorenko v. United States*, 449 U.S. 490, 517 (1981).

In this particular case, Al-Banna pleaded guilty to fraudulently obtaining his citizenship. (J.A. 169-71). As such, the District Court correctly followed the statute which states that when a court finds that a defendant's citizenship was obtained illegally, it shall revoke, cancel, or declare void the illegally obtained citizenship.

**B. The Denial of the Motion to Suppress Evidence**

The defendant's argument is two-fold: (1) The circumstances of the interview created a custodial environment where Al-Banna did not believe he was free to leave; and (2) that he did not make a knowing waiver of his *Miranda* rights. A review of the District Court's ruling reveals that its factual findings are fully supported in the record and that Al-Banna has failed to demonstrate that any of these factual findings were clearly erroneous. Furthermore, the District Court's ruling as to the non-custodial nature of the interview and the effect of the two Miranda warnings given to Al-Banna are supported by the record.

Al-Banna basically asserts in the motion to suppress, without any factual support, that law enforcement officers obtained statements from him in custody when he was confused and the answers were unintelligible. In the proceeding before the lower court, Al-Banna at no time raised the argument that he was not aware of his rights, or the effect of waiving his rights. He was at all times free to leave the interview in question, his movement was never restrained, nor was he placed under arrest. Moreover, prior to making any statement to the Special Agents, Al-Banna was fully advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Further, the totality of the circumstances show that no illegal compulsion was applied so as to overbear the defendant's will to resist and bring about an involuntary confession.

To the extent that Al-Banna argues his interview was custodial because he was compelled to attend the probation meeting where the interview occurred, case law indicate otherwise. In *Minnesota v. Murphy*, 465 U.S. 420 (1984), the Supreme Court evaluated statements made by a defendant while meeting with this probation officer. As in this case, the defendant claimed that because he was compelled to attend a meeting with his probation officer, his statements were

involuntary. The Supreme Court, however, held that "the general obligation to appear and answer questions truthfully [does] not in itself convert [defendant's] otherwise voluntary statements into compelled ones." *Id.* at 427.

Accordingly, the judgment of the District Court is affirmed.