**MARYLAND STATE DEPARTMENT OF EDUCATION, Division of Rehabilitation Services, Plaintiff–Appellant,**

v.

**U.S. DEPARTMENT OF VETERANS AFFAIRS; Jesse Brown, Secretary, Department of Veterans Affairs; John T. Farrar, Under Secretary for Health, Department of Veterans Affairs; Michael B. Phaup, Director, Veterans Affairs Medical Center, Defendants–Appellees.**

**National Federation of the Blind, Amicus Curiae.**

**No. 95–2626.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 24, 1996.

Decided Oct. 22, 1996.

**ARGUED:** Carmen Mercedes Shepard, Assistant Attorney General, Office of the Attorney General, Baltimore, MD, for Plaintiff–Appellant. William Charles Gleisner, III, Gleisner Law Offices, S.C., Milwaukee, WI, for Amicus Curiae. Stephen Woolman Preston, United States Department of Justice, Washington, D.C., for Defendants–Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General, Caroline E. Emerson, Assistant Attorney General, Office of the Attorney General, Baltimore, MD, for Plaintiff–Appellant. Kenneth M. Zuber, Gleisner Law Offices, S.C., Milwaukee, WI, for Amicus Curiae. Frank W. Hunger, Assistant Attorney General, Lynne Ann Battaglia, United States Attorney, William Kanter, Jeffrica Jenkins Lee, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Defendants–Appellees.

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge ERVIN and Judge LUTTIG joined.

## OPINION

HAMILTON, Circuit Judge:

The issue in this case is whether an arbitration panel, convened pursuant to § 107d–1(b) of the Randolph–Sheppard Blind Vending Act (Act), 20 U.S.C. §§ 107–107f, has the authority to order a federal agency or department found in violation of the Act to take specific remedial action. Appellant, the Maryland State Department of Education, Division of Rehabilitation Services, asserts that

the district court erred when it held that the arbitration panel convened in this case exceeded its authority when it ordered appellees, the United States Department of Veterans Affairs (DVA) and individuals associated with the DVA,[1] to undertake specific remedial action. Finding no error, we affirm.

## I.

Because this appeal involves the interpretation of a statute, it is helpful to begin our discussion with an overview of the Act and the statutory provisions at issue in this case.

## A.

Congress enacted the Act to "provid[e] blind persons with remunerative employment, enlarg[e] the economic opportunities of the blind, and stimulat[e] the blind to greater efforts in striving to make themselves self-supporting." 20 U.S.C. § 107(a). The Act requires that all new buildings constructed by any federal department or agency contain within them a "satisfactory site ... for the location and operation of a vending facility by a blind person." *Id.* § 107a(d)(1)(B). The Act provides that the Secretary of the United States Department of Education (Secretary) shall administer the Act and designate a state licensing agency, which will be responsible for implementing the provisions of the Act in each state. *Id.* § 107a(a). The responsibilities of the state licensing agency under the Act include issuing licenses to blind persons for operating vending facilities and administering the blind vending program within the state. *See id.* § 107a(a)(5). In addition, the Act grants the state licensing agency the authority to select a location for a blind vending facility within federal buildings and to determine the type of vending facility to be maintained, though this authority is subject to the approval of the head of the department or agency in control of the building. *Id.* § 107a(c).

In addition to its substantive provisions, the Act provides a procedural mechanism for resolving disputes that arise out of the administration of the Act. Section 107d–1(a), for example, provides for a full evidentiary hearing before the state licensing agency for any blind licensee who is "dissatisfied with any action arising from the operation or administration of the vending facility program." 20 U.S.C. § 107d–1(a). A blind licensee who is dissatisfied with the agency's decision following such a hearing may file a complaint with the Secretary who shall convene an arbitration panel to settle the dispute. *Id.*

Section 107d–1(b) provides a parallel provision for a state licensing agency that is dissatisfied with the efforts of a federal entity to comply with the provisions of the Act. Under § 107d–1(b), a state licensing agency that believes a federal entity is failing to comply with the Act may file a complaint with the Secretary and the Secretary shall convene a panel to arbitrate the dispute pursuant to § 107d–2. *Id.* § 107d–1(b). Section 107d–2(b)(2) discusses the composition of an arbitration panel convened under § 107d–1(b) and provides that if the panel finds that the acts or practices of the federal entity are in violation of the Act, the head of the federal entity "shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel." *Id.* § 107d–2(b)(2). According to the Act, the decision of the panel shall be "final and binding" on the parties. *Id.*

## B.

The parties' dispute arose in 1987, when the DVA began construction of the Veterans Affairs Medical Center (VAMC) in Baltimore, Maryland without providing notice to the Maryland State Department of Education, Division of Rehabilitation Services (Maryland), the state licensing agency, as required by § 107a(d)(1) of the Act. *See* 20 U.S.C. § 107a(d)(1). Upon learning of the VAMC project, Maryland applied to the DVA for a permit to operate a blind vending facility at the VAMC. The DVA denied Maryland's application, and an arbitration panel,

---

1. In addition to the United States Department of Veterans Affairs, Maryland brought this action against Jesse Brown, Secretary of the DVA; John T. Farrar, Undersecretary of the DVA; and Michael B. Phaup, Director of the Veterans Affairs Medical Center in Baltimore, Maryland.

convened pursuant to § 107d–1(b) of the Act, held a hearing to arbitrate the dispute.

On May 5, 1994, the arbitration panel issued a unanimous order finding that the provisions of the Act applied to the VAMC and ordering that the parties enter into negotiations to permit Maryland and its licensed vendor to operate a vending facility at the VAMC. The panel's order provided further that if the parties failed to agree on a permit for the vending facility by June 1, 1994, each party should submit a proposed permit before June 15, 1994, and the permit preferred by a majority of the panel would become the final award of the panel.

On June 15, 1994, Maryland submitted a proposed permit to the panel. Although the DVA did not submit a proposed permit, it filed a motion seeking reconsideration of the panel's decision.

On October 15, 1994, the arbitration panel issued its final order in which it directed the DVA to turn over to Maryland the operation of the retail store already located at the VAMC, then operated by the DVA in accordance with the Veterans' Canteen Service Act, 38 U.S.C. §§ 7801–7810.[2] In addition to the retail store space, the arbitration panel also ordered that the DVA turn over certain fixtures and equipment.

Maryland filed this action in the United States District Court for the District of Maryland in response to the DVA's continued refusal to comply with the arbitration panel's award. In its Amended Complaint, Maryland sought an order from the district court requiring the DVA to comply with the arbitration panel's award or, alternatively, an order requiring the DVA to comply with the Act by providing a satisfactory site for a blind vendor's facility at the VAMC. On May 31, 1995, the DVA issued a final order with respect to its responsibilities under the Act and offered three specific sites within the VAMC which the DVA deemed satisfactory under the Act for the operation of a blind vending facility. Maryland rejected each of these sites as unsatisfactory. Both parties moved for summary judgment, and on August 17, 1995, the district court entered judgment for the DVA. *Maryland State Dep't of Educ. v. United States Dep't of Veterans Affairs*, 896 F.Supp. 513 (D.Md.1995). The district court held that the arbitration panel had exceeded its authority under the Act when it ordered a specific remedy and denied Maryland's request for relief. Maryland noted a timely appeal.

## II.

■ On appeal, Maryland argues that the district court erred when it declined to enforce the arbitration panel's award and entered judgment for the DVA, holding that § 107d–2(b)(2) of the Act does not authorize an arbitration panel, convened under § 107d–1(b) of the Act, to award a specific remedy once a violation of the Act has been found. We disagree and affirm the judgment of the district court in favor of the DVA.

### A.

Whether a party is entitled to summary judgment is a matter of law which we review *de novo*. *Higgins v. E.I. DuPont de Nemours and Company*, 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B.

Courts are charged with the duty to apply the law that Congress enacted. Therefore, we begin with the language of the statute

---

**2.** The Veterans' Canteen Service Act (VCS), 38 U.S.C. §§ 7801–7810, was created for the purpose of making essential merchandise and services available to veterans hospitalized or domiciled at DVA hospitals at reasonable prices. 38 U.S.C. § 7801. Pursuant to the VCS, retail stores and canteens are operated by the DVA at its hospitals where deemed "necessary and prac-

ticable." *Id.* § 7802(1). The DVA initially argued before the district court that the arbitration panel's decision in this case was not enforceable because the Randolph–Sheppard Act did not apply to DVA facilities as contrary to the VCS. The DVA has since abandoned this argument, however, and now concedes that the terms of the Act are applicable to DVA facilities.

itself, "bearing in mind that we should give effect to the legislative will as expressed in the language." *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 954, 130 L.Ed.2d 897 (1995). Thus, "[c]ourts are not free to read into the language what is not there, but rather should apply the statute as written." *Id.* In other words, if the statutory language " 'is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.' " *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

■ There are, however, rare and narrow exceptions under which courts may stray beyond the plain language of unambiguous statutes. *Id.* One such exception arises if the literal application of statutory language would lead to an absurd result. *See Crooks v. Harrelson*, 282 U.S. 55, 59–60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930). For this exception to apply, however, the absurdity "must be so gross as to shock the general moral or common sense. And, there must be something to make plain [Congress' intent] that the letter of the statute is not to prevail." *Id.* (internal citations omitted).

■ Another circumstance permitting courts to look beyond the plain meaning of unambiguous statutory language arises if literal application of the statutory language would produce a result demonstrably at odds with the intent of Congress; in such cases, the intent of Congress rather than the strict language controls. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such cases, the intention of the drafters, rather than the strict language controls.") (internal quotation marks and citation omitted). To come within the ambit of this exception, however, the contrary intent must have been clearly expressed by the legislative body. *See Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). In the ab-

sence of expressed Congressional intent, we must assume that Congress intended to convey the language's ordinary meaning. *See United States v. Goldberger & Dubin, P. C.*, 935 F.2d 501, 506 (2d Cir.1991) ("The words of a statute should be given their normal meaning and effect in absence of showing that some other meaning was intended."); *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir.1989) ("In the absence of a contrary indication, the court must assume the drafters of a statute intended to convey the ordinary meaning attached to the language.").

### C.

■ Applying these rules of statutory construction to the language of § 107d–2(b)(2), we hold that the plain language of § 107d–2(b)(2) limits the authority of an arbitration panel convened under § 107d–1(b) to a determination of whether the acts of the federal entity "are in violation" of the substantive provisions of the Act. *See* 20 U.S.C. § 107d–2(b)(2). Section 107d–2(b)(2) provides, in pertinent part:

> If the panel appointed pursuant to paragraph (2) finds that the acts or practices of any such department, agency, or instrumentality are in violation of this chapter, or any regulation issued thereunder, *the head of any such department, agency, or instrumentality shall cause such acts or practices to be terminated promptly* and shall take such other action as may be necessary to carry out the decision of the panel.

*Id.* (emphasis added). The plain language of this provision provides that a § 107d–1(b) arbitration panel will determine whether the federal entity is in violation of the Act, while the head of the federal entity will remedy the violation. Thus, the statute places the responsibility for ending the violation on the head of the federal entity and does not authorize a § 107d–1(b) arbitration panel to order the federal entity to take specific remedial action. Since the language of the statute is "facially clear and 'within the constitutional authority of [Congress], the sole function of th[is] court[ ] is to enforce it according to its terms.' " *See Murphy*, 35

F.3d at 145 (quoting *Caminetti*, 242 U.S. at 485, 37 S.Ct. at 194).

While the question of the scope of an arbitration panel's authority under § 107d–1(b) is one of first impression in this circuit, in *Georgia Dep't of Human Resources v. Nash*, 915 F.2d 1482 (11th Cir.1990), the Eleventh Circuit discussed the authority of a § 107d–1(b) arbitration panel as set forth in § 107d–2(b)(2). *Id.* at 1491–92. The precise question before the Eleventh Circuit in *Nash* was whether the district court properly interpreted the Act to grant a blind licensee a cause of action for damages against the state licensing agency for the agency's failure to file a complaint against a federal entity under § 107d–1(b). *Id.* at 1483. In holding that the Act does not authorize such a cause of action, the Eleventh Circuit discussed extensively the remedial provisions of the Act and the powers granted thereunder. *See id.* at 1487–95.

In particular, the court examined the differences between the remedial procedures provided under § 107d–1(a) for complaints filed by blind licensees against the state licensing agency and those provided under § 107d–1(b) for complaints filed by the state licensing agency against a federal entity. The court noted differences in the composition of the arbitration panels convened under § 107d–1(a) and § 107d1(b) and in the remedial powers granted to those panels. With regard to the powers of an arbitration panel convened under § 107d–1(b), the Eleventh Circuit considered the plain language of § 107d–2(b)(2) and concluded that a panel convened to resolve a dispute between a state licensing agency and a federal entity does not have the authority to order a specific remedy, but rather is limited to a determination of whether the federal entity is in compliance with the terms of the Act:

> [Section 107d–2(b)(2)] specifically grants the arbitration panel in subsection (b) cases authority to decide whether the federal entity's acts "are in violation" of the Act. The provision, however, limits the panel's authority to that decision alone: although the panel may determine that a violation is occurring and may identify the discrete acts that are in violation, the statute does not authorize the arbitration pan-

el to order the federal entity to take any remedial action. Rather, the statute expressly places the obligation of ending the violation on the federal entity itself.

*Id.* at 1492. The Eleventh Circuit contrasted the language placing express limits on a § 107d–1(b) arbitration panel with the absence of such language limiting the authority of a § 107d–1(a) arbitration panel.

As support for its assertion that the plain language of § 107d–2(b)(2) does not limit the remedial powers of a § 107d–1(b) arbitration panel, Maryland relies on *Randolph–Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90 (D.C.Cir.1986). In *Weinberger*, the court quoted from § 107d–2(b)(2) and concluded that "the Secretary of Education has broad remedial powers under the Act." *Id.* at 109. The District of Columbia Circuit, however, did not discuss how it reached its conclusion that the Secretary's remedial powers under § 107d–2(b)(2) were broad. *See id.* Nor did the court discuss the effect of the "head of any such department" clause, which vests responsibility for "caus[ing] [violative] acts or practices to be terminated promptly" in that individual. *See id.; see also* 20 U.S.C. § 107d–2(b)(2). We believe that our interpretation of § 107d–2(b)(2) gives effect to all of the language of the provision and, therefore, decline to follow the District of Columbia Circuit's interpretation of § 107d–2(b)(2).

Maryland also argues that our interpretation cannot be correct because under such an interpretation, a federal entity can simply refuse to remedy the violations found by a § 107d–1(b) panel. As recognized above, the court may look beyond the plain language of the statute, if the literal application of statutory language would lead to an absurd result. *See Crooks v. Harrelson*, 282 U.S. 55, 59–60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930). However, the absurdity "must be so gross as to shock the general moral or common sense." *Id.*

In this case, the result of our interpretation of § 107d–2(b)(2) is that the DVA is vested with the responsibility to end the acts found in violation of the Act and to take other steps necessary to bring it into compliance. While it may have been wiser for Congress to have provided for an automatic

review of the remedial steps taken by a federal entity in response to an arbitration decision, the fact that Maryland is left without such a review is not "so gross as to shock the general moral or common sense." *See id.* In addition, if a state licensing agency is dissatisfied with the response of a federal entity to an arbitration panel's decision, the state agency can file another complaint with the Secretary and have a second arbitration panel determine whether the federal entity's acts in response to the first decision bring it into compliance with the Act. Again, this solution may seem cumbersome, but it is not "so gross as to shock the general moral or common sense." *See id.* Therefore, we must adhere to the result dictated by the plain language of the statute.

Finally, Maryland argues that to hold that a § 107d–1(b) arbitration panel does not have the authority to order specific relief contravenes the intent of Congress. In particular, Maryland cites legislative history suggesting that at the time Congress enacted the 1974 Amendments to the Act, which included § 107d, it was concerned with abuses of the program by federal agencies. S.Rep. No. 937, 93d Cong., 2d Sess. 10–11 (1974). As Maryland notes, the legislative history indicates that Congress enacted the remedial provisions of the Act to "provide the means by which aggrieved vendors and State agencies may obtain a final and satisfactory resolution of disputes." *Id.* at 20.

This legislative history does not, however, cast a shadow on our holding or the Eleventh Circuit's interpretation of § 107d–2(b)(2) in *Nash.* While the Senate Report indicates that Congress intended to provide a final resolution of disputes arising from the administration of the Act, it does not clearly express Congress' intent that the resolution of every facet of these disputes—that is, both the fact of a violation and the appropriate remedy—should lie with the arbitration panel. As indicated above, we read the plain language of the statute to require that the arbitration panel resolve the dispute as to whether the federal entity in question is in violation of the statute, while the responsibility for correcting the violation lies with the federal entity head. Nothing in the legislative history cited by Maryland suggests that this interpretation will produce a result "demonstrably at odds with the intentions of [the Act's] drafters." *See Ron Pair Enters., Inc.,* 489 U.S. at 242, 109 S.Ct. at 1031. Therefore, we adhere to the result dictated by the plain language of the statute.

### III.

In summary, the arbitration panel not only determined that the DVA's actions were in violation of the Act, but also ordered the DVA to turn over to Maryland specific space in the VAMC, as well as certain fixtures and equipment. We agree with the district court that by ordering a specific remedy to the violation it found, the arbitration panel exceeded its authority under § 107d–2(b)(2). Therefore, we affirm the district court's grant of summary judgment in favor of the DVA.[3]

*AFFIRMED.*

---

**3.** Because we are affirming the judgment of the district court on the basis that the arbitration panel exceeded its authority under § 107d–2(b)(2), we need not address the DVA's alternative argument that enforcement of the panel's award would usurp the DVA's statutory authority under the VCS.