# United States Court of Appeals for the Federal Circuit

05-5010

COMMONWEALTH OF KENTUCKY,
EDUCATION CABINET,
DEPARTMENT FOR THE BLIND,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Christopher Solop, Armstrong Allen, PLLC, of Jackson, Mississippi, for plaintiff-appellant.  Of counsel was Lynn Hawkins Patton.

James W. Poirier, Trial Attorney, Commercial Litigation Branch, Civil Division, of Washington, DC, argued for defendant-appellee.  With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director and Bryant G. Snee, Assistant Director.

Appealed from:  United States Court of Federal Claims

Judge Lawrence J. Block

# United States Court of Appeals for the Federal Circuit

05-5010

COMMONWEALTH OF KENTUCKY,
EDUCATION CABINET,
DEPARTMENT FOR THE BLIND,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  September 21, 2005

_____

Before SCHALL, <u>Circuit Judge</u>,  ARCHER, <u>Senior Circuit Judge</u>, and BRYSON, <u>Circuit Judge</u>.

BRYSON, <u>Circuit Judge</u>.

In October 2003, the Department of the Army issued a solicitation for bids on a contract to provide services for a military cafeteria at Fort Campbell, Kentucky.  The solicitation indicated that the contract was subject to the Randolph-Sheppard Act, 20 U.S.C. §§ 107 <u>et seq.</u> ("RSA").  Under the RSA, state licensing authorities representing the interests of licensed blind vendors are allowed to submit bids on federal contracts on behalf of those vendors, and those bids are given special consideration.  <u>Id.</u> § 107(b).  Regulations promulgated under the RSA require federal agencies to discuss the licensing authority's bid with the Secretary of Education whenever the bid "is judged

to be within a competitive range and has been ranked among those proposals which have a reasonable chance of being selected for final award." 34 C.F.R. § 395.33(b). The Department of Defense has gone even further, mandating that "if the State licensing agency submits a proposal and it is within the competitive range established by the contracting officer, the contract will be awarded to the State licensing agency." Dep't of Defense Directive No. 1125.3, § E2.1.3.1.2. In order to facilitate compliance with the Department of Defense Directive, the contracting officer in this case incorporated two competitive criteria in the cafeteria services solicitation. According to the solicitation, the first and more important criterion was the amount of the bid, which would be classified as either Satisfactory or Unsatisfactory. The second criterion was the bidder's past performance on other contracts, upon which each bidder would receive a rating ranging from Exceptional to Unsatisfactory.

The Kentucky Department for the Blind ("KDB"), a state licensing agency under the RSA, submitted a bid on the contract. The Army classified KDB's past performance as "Very Good," the same rating that most of the other bidders received. The Army also classified the cost of KDB's bid as "Satisfactory." However, three other companies' bids contained a lower price than KDB's bid. The contracting officer subsequently determined that only the three lowest prices fell within the "competitive range." Because KDB's bid was not one of the three lowest, it was deemed to be outside the competitive range. KDB's bid therefore did not receive preferential treatment, and KDB was not awarded the contract.

After the contract was awarded, KDB requested a debriefing on the bidding process. From the debriefing, KDB learned that it was placed outside the competitive

range even though, like the winning bidder, it received a rating of "Satisfactory" on price and a rating of "Very Good" on past performance. KDB then filed a bid protest action in the Court of Federal Claims, contending that its bid should have been included within the competitive range. KDB argued that it should have been placed in that range because its past performance should have been rated "Exceptional," rather than "Very Good," and because the contracting officer should not have limited the competitive range with respect to price to the three lowest bids.

On the government's motion, the trial court dismissed KDB's complaint for lack of jurisdiction. Kentucky v. United States, 62 Fed. Cl. 445 (2004). Because KDB's complaint had a "reasonable nexus" to the RSA, the court held that KDB was required to exhaust its administrative remedies under the Act by asking the Secretary of Education to convene an arbitration panel to resolve the dispute. KDB appeals that dismissal, arguing that its complaint did not raise a claim under the RSA and thus arbitration is inappropriate and unavailable. In addition, KDB argues that even if its claims fall within the scope of the RSA, arbitration is not mandatory under the RSA, but is an optional procedure that state licensing agencies can invoke as an alternative to other judicial and administrative remedies.

I

The RSA contains two provisions for arbitration of disputes arising under the Act. Section 107d-1(a) provides that any vendor who is dissatisfied with "any action arising from the operation or administration of the vending facility program . . . may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute" after first complaining to the state licensing agency. 20 U.S.C. § 107d-1(a). Section 107d-

1(b) provides that when a state licensing agency determines that a federal agency is "failing to comply with the provisions of this chapter or any regulations issued thereunder . . . such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute." Id. § 107d-1(b). The trial court held that the statutory language "encompasses all federal agency actions that have a reasonable nexus to the Act, which beyond a doubt would include a challenge to any agency decision to reject a proposal in response to a solicitation involving . . . the 'operation' of a vending facility." The court further noted that "[i]t is doubtful . . . whether procurement award issues exist that are truly independent of the Act." We do not agree that the scope of the arbitration provision of the RSA is so broad.

Section 107d-1(b) clearly limits the types of grievances that are subject to the RSA arbitration scheme. Only when the state licensing agency determines that the federal agency is "failing to comply with the provisions of this chapter or any regulations issued thereunder" is arbitration allowable. See 20 U.S.C. § 107d-1(b); see also 34 C.F.R. § 395.37(a).[1] Section 107d-1(b) provides, as one example of the type of claim that is arbitrable, "a limitation on the placement or operation of a vending facility as

---

[1] Citing a different regulation, 34 C.F.R. § 395.33(b), the government argues that the Department of Education regulations provide for arbitration of any dispute in which the state licensing agency "is dissatisfied with an action taken relative to its proposal." Read in context, however, that regulation cannot be interpreted as broadly as the government suggests. Section 395.37(a) of the Department of Education regulations provides that the state licensing agency may initiate the steps leading to arbitration if a federal agency "is failing to comply with the provisions of the [RSA] or of [the Department of Education regulations]." Moreover, the Department of Defense regulations that applied to the solicitation in this case provided that arbitration was available "[w]henever any State Licensing Agency for the blind determines that any activity of the Department of Defense is failing to comply with the provisions of the [RSA]." 32 C.F.R. § 260.5 (2003).

described in . . . this title." Section 107d-2 further emphasizes that the arbitration panel may act only if it "finds that the acts or practices of any [federal agency] are in violation of this chapter, or any regulation issued thereunder." 20 U.S.C. § 107d-2(b); see also 34 C.F.R. § 395.37(d) ("If the panel finds that the acts or practices of any department . . . are in violation of the Act or of this part, the head of any such department . . . shall cause such acts or practices to be terminated promptly."). Accordingly, not every complaint that a state licensing agency may have against a federal agency is arbitrable, but only those complaints that allege a violation of the RSA or its attendant regulations.

The legislative history of the RSA bears out that interpretation of the statute. Although the RSA was originally enacted in 1936, see Act of June 20, 1936, ch. 638, 49 Stat. 1559, the arbitration provisions were not incorporated into the RSA until 1974, see Randolph-Sheppard Act Amendments of 1974, Pub. L. No. 93-516, Title II, § 206, 88 Stat. 1617, 1626. Congress added the arbitration provisions because it determined that "State agencies are still without recourse from decisions of Federal agencies regarding blind vendor facilities on property they control." S. Rep. No. 93-937, at 20 (1974). In other words, prior to the amendment blind vendors and state licensing agencies had no neutral forum in which to press claims of violations of the RSA that did not involve violations of contract rights or federal procurement provisions. See Wilson v. Watson, 309 F. Supp. 263, 271 (D. Kan. 1968), aff'd, 422 F.2d 866 (10th Cir. 1970). The arbitration provisions closed that gap, providing a "means by which aggrieved vendors and State agencies may obtain a final and satisfactory resolution of disputes" under the RSA. S. Rep. No. 93-937, at 20.

Arbitration, however, was not meant to cover every complaint by a state licensing agency concerning the procurement of vending services. Congress enacted the arbitration provisions to fill a gap in the existing statutory scheme, under which vendors and state licensing agencies could bring claims based on a breach of contract or a violation of other federal procurement provisions, but could not bring a claim arising under the RSA. See Wilson, 309 F. Supp. at 271. Congress specifically sought to fill that gap in a targeted fashion, covering only claims alleging a failure to comply with the RSA. There is no reason to believe that Congress meant to funnel every complaint by a state licensing authority against a federal agency into arbitration, thus duplicating remedies that the failed bidders already had against the government. The Senate report on the arbitration provisions noted that "[i]t is not anticipated that these [arbitration] mechanisms will be used with great frequency." S. Rep. No. 93-937, at 20. Congress had that expectation because it intended that the arbitration provisions would be triggered only if the state licensing agency alleged a violation of the RSA, and not in the case of other, more common allegations such as a breach of contract or a violation of government procurement provisions.

Apart from the purpose and history of the arbitration provision, it would be odd to interpret the statute to direct vendors and state licensing agencies into RSA arbitration even if their complaints had nothing to do with a federal agency's violation of the RSA. The arbitration system is administered by the Department of Education, which has expertise in the RSA, but no special expertise in general matters of federal procurement law. For claims relating to procurement disputes not based on the RSA and its regulations, there would be no reason to bypass conventional bid protest and federal

contract remedies in favor of arbitration by panels convened by the Secretary of Education.

Decisions from other circuits support the conclusion that the statutory arbitration remedy applies only if the state licensing agency claims a violation of the RSA. In Maryland State Department of Education v. U.S. Department of Veteran Affairs, 98 F.3d 165 (4th Cir. 1996), the Fourth Circuit construed the RSA's arbitration provisions in a case in which the Department of Veteran Affairs refused to comply with the decision of a RSA arbitration panel. The Fourth Circuit noted that "the plain language of § 107d-2(b)(2) limits the authority of an arbitration panel convened under § 107d-1(b) to a determination of whether the acts of the federal entity 'are in violation' of the substantive provisions of the Act." Id. at 169. In fact, the court held that determining if there was a violation of the RSA was the sole responsibility of the arbitration panel. Id.; see also Minn. Dep't of Econ. Sec. v. Riley, 107 F.3d 648, 650 (8th Cir. 1997) (The RSA arbitration panel "decided competing VCS vending machines at the VA Medical Center would violate the Act. The Panel did exactly what the statute authorizes."). In sum, it is clear that only claims that allege a violation of the RSA fall within the scope of RSA-prescribed arbitration.

Although we construe the RSA's arbitration provisions more narrowly than the trial court, KDB's complaint alleges a violation of the RSA even under our narrower interpretation. KDB's complaint hinges on the contracting officer's exclusion of KDB's bid from the solicitation's "competitive range." KDB's first amended complaint alleges that the contracting officer "abused her discretion and eliminated the KDB, knowing that if the KDB was included in the competitive range, the KDB was required to receive the

contract award under the Randolph-Sheppard Act and related regulations." Simply put, KDB alleges that the Army thwarted the regulations promulgated under the RSA by constructing the competitive range and evaluating KDB's past performance in a way that avoided giving the state licensing agency priority in the bidding process. See 34 C.F.R. § 395.33(b); Dep't of Defense Directive No. 1125.3. If there were any doubt as to whether KDB's claim arises under the RSA, the complaint dispels it, as the complaint specifically alleges that KDB was entitled to the contract "under the Randolph-Sheppard Act and related regulations." Because KDB's complaint is premised on a violation of the RSA, it falls within the scope of the arbitration provisions of the Act.

II

KDB contends that even if its claims fall under the RSA, the RSA's arbitration scheme is not mandatory. KDB points to the language of section 107d-1, which states that a "licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute." 20 U.S.C. § 107d-1. KDB argues that this language makes clear that arbitration is permissive, because it states that the state licensing agency "may" file a complaint for arbitration, whereas it states that if the state licensing agency requests arbitration, the Secretary "shall" convene a panel. The government responds that the term "may" simply reflects that the state licensing agency has the option of challenging the contracting agency's conduct, but does not suggest that it has a choice of remedies if it decides to exercise that option.

KDB's argument is not without some force. The Supreme Court has noted that "the word 'may,' when used in a statute, usually implies some degree of discretion." United States v. Rodgers, 461 U.S. 677, 706 (1983); see also McBryde v. United

<u>States</u>, 299 F.3d 1357, 1362 (Fed. Cir. 2002). That common-sense principle is especially applicable "when the same [provision] uses both 'may' and 'shall,' [because] the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." <u>Anderson v. Yungkau</u>, 329 U.S. 482, 485 (1947). However, Congress's use of the two terms "may" and "shall" does not end the analysis of whether arbitration is mandatory. Instead, the use of the word "may" to denote discretion "is by no means invariable, . . . and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." <u>Rodgers</u>, 461 U.S. at 706.

As we noted above, Congress enacted the arbitration provisions to provide state licensing agencies and blind vendors a neutral forum in which to bring allegations that federal agencies had violated the RSA. Congress intended that arbitration would be "the means by which aggrieved vendors and State agencies may obtain a final and satisfactory resolution of disputes." S. Rep. No. 93-937, at 20. The RSA sets out in detail how arbitration panels will be chosen, the rules that will govern the arbitration, and who shall bear the costs of the arbitration. <u>See</u> 20 U.S.C. § 107d-2. The statute makes the decision of the arbitration panel "final and binding on the parties except as otherwise provided in this chapter," <u>id.</u> § 107d-1(b), and it provides that judicial review of the panel's decision "shall be subject to appeal and review as a final agency action," <u>id.</u> § 107d-2(a). Those provisions make clear that Congress created a comprehensive scheme for the administration of disputes arising from violations of the RSA. In the absence of a clear indication to the contrary, Congress's creation of a comprehensive remedial scheme is a strong indication that the scheme prescribed by statute was

intended to be exclusive.  See United States v. Babcock, 250 U.S. 328, 331 (1919) ("[W]here a statute creates a right and provides a special remedy, that remedy is exclusive.").

It is especially noteworthy that Congress stated that the decision of the arbitration panel would be the "final and binding" resolution of the state licensing agency's complaint and that the arbitration decision would be reviewable by a court as final agency action.  Congress provided that arbitration decisions would be reviewed under the standards set forth in the Administrative Procedure Act, i.e., that a court would set aside the arbitration decision only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  20 U.S.C. § 107d-2; 5 U.S.C. § 706(2)(A); see also Premo v. Martin, 119 F.3d 764, 768 (9th Cir. 1997).  It would be peculiar for Congress to require that a reviewing court give the arbitration award such a high level of deference if it meant to allow parties to circumvent the entire procedure by bringing actions under the RSA directly in court if they so chose, without being subject to a deferential standard of review.  Thus, we conclude that the use of the term "may" in the statute refers only to the initial discretion that the state licensing agency has in electing to challenge agency action in the first instance; if the state licensing agency decides to complain of a violation of the RSA, however, it must do so through the arbitration process.

Other circuits have agreed that the arbitration of RSA complaints is mandatory. In Fillinger v. Cleveland Society for the Blind, 587 F.2d 336 (6th Cir. 1978), the Sixth Circuit held that before blind vendors could bring a district court action under the RSA against the state licensing agency, the vendors had to exhaust their administrative

remedies by entering into arbitration. The court in <u>Fillinger</u> rested its holding on the fact that "Congress' decision to provide administrative and arbitration remedies for aggrieved blind vendors clearly evidences a policy judgment that the federal courts should not be the tribunal of first resort for the resolution of such grievances." <u>Id.</u> at 338. In <u>Randolph-Sheppard Vendors of America v. Weinberger</u>, 795 F.2d 90, 93 (D.C. Cir. 1986), the D.C. Circuit similarly held that blind vendors and state licensing agencies had to first pursue their complaints under the RSA in arbitration. The court held that the RSA "establishes a clear and explicit system for resolution of disputes arising under the Act." <u>Id.</u> at 102. Therefore, the court reasoned, it is "unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could, whenever it chose, circumvent the system and seek <u>de novo</u> determination in federal court." <u>Id.</u> at 103; <u>see also</u> <u>Comm. of Blind Vendors of D.C. v. Dist. of Columbia</u>, 28 F.3d 130, 135 (D.C. Cir. 1994). Those decisions and the reasoning underlying them support our conclusion that arbitration is mandatory for claims arising from the RSA.

Only one court appears to have found that the RSA's arbitration scheme is permissive. In <u>Texas State Commission for the Blind v. United States</u>, 6 Cl. Ct. 730, 735 n.12 (1984), the Claims Court commented that arbitration was permissive under the RSA. In that case, however, the parties had already arbitrated the dispute. <u>Id.</u> at 736. The court's statement that the parties were not required to arbitrate was therefore dictum. Moreover, that decision is not binding on us, and we find the reasoning of the Sixth and D.C. Circuits more persuasive. Accordingly, we hold that for claims brought under the RSA, arbitration is mandatory. Because KDB did not exhaust that mandatory

administrative remedy, the Court of Federal Claims correctly held that it lacked jurisdiction over KDB's complaint. See Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938).

Each party shall bear its own costs for this appeal.

<u>AFFIRMED.</u>