**In re Kathern J. MRAVIK, Debtor.**

No. 08–28754–svk.

United States Bankruptcy Court, E.D. Wisconsin.

Dec. 31, 2008.

Amy J. Ginsberg, Office of the U.S. Trustee, Milwaukee, WI, for U.S. Trustee.

Arnold F. Lueders, III, Milwaukee, WI, for Debtor.

## MEMORANDUM DECISION AND ORDER ON THE U.S. TRUSTEE'S MOTION TO DISMISS

SUSAN V. KELLEY, Bankruptcy Judge.

### Facts and Procedural Background

The issue is whether a debtor whose retirement plan contributions would not be considered part of her disposable income under Chapter 13 should have her Chapter 7 case dismissed as an abuse. Kathern Mravik (the "Debtor") filed a petition under Chapter 7 on August 12, 2008. She has been employed as a clerk for Milwaukee County for over 20 years. Her monthly income is $4,025, and her principal assets are her personal residence valued at $190,000, a retirement account with a balance of $125,000, and a 1997 Mercury Villager minivan. The majority of her debt is a $164,000 mortgage on her residence, which she intends to reaffirm. Aside from that obligation, she has credit card debt totaling about $21,000.

The Debtor's $48,300 annual income exceeds the $41,528 median income in Wisconsin for a one-person household. Therefore, in order to qualify for Chapter 7 relief, she was required to complete the calculations on Bankruptcy Form 22A, known as the "means test." After the Debtor subtracted her allowed expenses, her Form 22A reflected $382.13 of monthly disposable income. This amount exceeds $182.50, triggering a "presumption of abuse" under Bankruptcy Code § 707(b)(2)(A).

Given the presumption of abuse, the U.S. Trustee filed a Motion under § 707(b), claiming that the Debtor's case should be dismissed or she should voluntarily convert to Chapter 13. However,

for the last 15 years, the Debtor has made regular contributions to a "457 plan," a tax-advantaged retirement plan similar to a 401(k) or 403(b) plan for state and local government employees or employees of tax-exempt organizations.[1] Retirement plan contributions are not included in the definition of Chapter 13 disposable income, and if the Debtor's case is converted to Chapter 13, she would not be required to include her retirement plan contributions in calculating the amount to be paid to unsecured creditors.[2] As a result of the exclusion of the retirement plan contributions, the Debtor's unsecured creditors would receive nothing under a Chapter 13 plan. In fact, she would be required to make no payments at all to the Chapter 13 trustee, since she is apparently current on her mortgage obligation, and has no other secured debt. Claiming either that this situation constitutes "special circumstances," or in the alternative focusing on the permissive language of § 707(b),[3] the Debtor contends that her case is not abusive of Chapter 7 and should not be dismissed.

The U.S. Trustee's position is that the Court *must* either convert or dismiss a case if a debtor fails to rebut the presumption of abuse, and that the Court lacks any discretion even if conversion to Chapter 13 would result in no payments to creditors. The U.S. Trustee also contends that if the Debtor successfully rebuts the presumption or the Court determines not to dismiss or convert the case under § 707(b)(1), the Debtor's case should be dismissed under the "totality of the circumstances" test of § 707(b)(3) of the Code.

### Analysis

The principal statutory provision at issue in this case is § 707(b)(1), which states:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, *may* dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1) (emphasis added).

Under § 707(b)(2)(A), a case is presumed an abuse if an above-median debtor's disposable income exceeds the statutory guideline. There is no dispute here that the presumption of abuse arises as the Debtor's 60–month disposable income figure of $22,927.80 exceeds the $10,950 threshold under § 707(b)(2)(A)(i)(II). In fact, the Debtor checked the box on Form

---

1. Information about IRC 457(b) Deferred Compensation Plans is available at the IRS website, www.irs.gov/retirement/article/0,, id=172437,00.html

2. BAPCPA excludes from Chapter 13 disposable income any amounts withheld from wages as contributions to an ERISA qualified plan or a 457 plan. 11 U.S.C. § 541(b)(7)(A)(II); *see, e.g., In re Mati*, 390 B.R. 11 (Bankr. D.Mass.2008) (debtor's 401(k) contributions were not included in disposable income and did not evidence bad faith under the totality of the circumstances; debtor was merely taking advantage of what the law allowed); *In re*

*Devilliers*, 358 B.R. 849, 864 (Bankr.E.D.La. 2007) (voluntary contributions to qualified retirement plans should not be considered when calculating disposable income).

3. The language of § 707(b) is that the court "may" dismiss the case, not that the court "shall" dismiss the case if it is deemed an abuse. In response to the U.S. Trustee's argument for dismissal under the totality of the circumstances, the Debtor simply contends that she did not file her petition with any sort of bad faith, and that her financial circumstances do not warrant dismissal under that provision.

22A stating that the presumption of abuse arises in her case.

■ The Code states that "the presumption of abuse may only be rebutted by demonstrating special circumstances." 11 U.S.C. § 707(b)(2)(B)(i). Although § 707(b)(2)(B) lists only two examples of special circumstances—active Armed Forces duty or a serious medical condition—other scenarios can qualify if there is no "reasonable alternative" to the expense or adjustment of income. 11 U.S.C. § 707(b)(2)(B)(ii); *In re Crego,* 387 B.R. 225 (Bankr.E.D.Wis.2008). In *Crego,* this Court recognized special circumstances where the debtors were undergoing a divorce and maintained separate households, because there was no reasonable alternative but to incur the additional expenses for the welfare of the debtors' family. In this case, arguably the Debtor has a reasonable alternative in that she could stop or reduce the contributions to her retirement plan. *See In re Smith,* 388 B.R. 885 (Bankr.C.D.Ill.2008) (debtor's repayment of 401(k) loan not a special circumstance); *but see In re Cribbs,* 387 B.R. 324 (Bankr. S.D.Ga.2008) (circumstances leading to 401(k) loan rendered repayment of 401(k) loan special circumstances). Even if retirement plan contributions could qualify as special circumstances in some situations, such as if the debtor was on the verge of retirement and needed the account to live on, there is no documentation in this case that the retirement plan contributions are required for the Debtor's health and welfare, and for which there is

no reasonable alternative. *See In re Martin,* 371 B.R. 347, 357 (Bankr.C.D.Ill.2007) (debtors failed to provide sufficient detailed information regarding whether 401(k) loan repayments constituted special circumstances).

■ Does the Debtor's failure to rebut the presumption of abuse by showing special circumstances require dismissal of her case? The plain language of the statute that the court "may" dismiss the case, suggests that discretion exists. A few courts have addressed the consequences of a debtor's failure to prove special circumstances, with some concluding without analysis or in dicta that a court must dismiss or convert when the presumption of abuse is not rebutted, regardless of the specific facts of a case. *See In re Witek,* 383 B.R. 323 (Bankr.N.D.Ohio 2007) (debtor failed to provide evidence that pregnancy was a special circumstance requiring adjustment of expenses; court dismissed case unless debtor converted to Chapter 13); *In re Haman,* 366 B.R. 307 (Bankr. D.Del.2007) (court stated that it had no discretion if presumption of abuse was not rebutted, but debtor rebutted presumption by showing special circumstances). Neither of these cases involved a debtor whose retirement plan contributions would result in a zero-payment Chapter 13 plan.[4]

Two cases specifically address whether the word "may" in § 707(b) provides discretion, and reach the opposite conclusions. In *Justice v. Advanced Control Solutions, Inc.,* the court considered whether the provisions of § 707(b) apply to a case

---

**4.** Many of the cases involve the repayment of loans from retirement plans and attempts to characterize them as either secured claims that can be deducted under the means test or as special circumstances. *See, e.g., In re Mordis,* 2007 WL 2962903, 2007 Bankr.LEXIS 3527 (Bankr.E.D.Mo. Oct. 9, 2007); *In re Lenton,* 358 B.R. 651, 659 (Bankr.E.D.Pa. 2006). Often these courts justify the distinc-

tion between the treatment of loan repayments in Chapter 7 and 13 by pointing out that Chapter 13 plans last three to five years, and the retirement plan loan repayment may be completed prior to the end of the plan. That distinction does not apply to the disparate treatment of retirement plan contributions.

that has been converted from Chapter 13 and whether dismissal is mandatory or discretionary. 2008 WL 4368668, 2008 U.S. Dist. LEXIS 81046 (W.D.Ark. Sept. 22, 2008). In *Justice*, after converting his case from Chapter 13 to Chapter 7, the debtor filed a Form 22A indicating a presumption of abuse, and a creditor moved to dismiss based on the presumed abuse. After a hearing, the bankruptcy court denied the motion, finding that there were significant assets for the Chapter 7 trustee to administer, and that dismissal would not be in the interest of the creditors. The creditor appealed, and the district court reversed the denial of the motion to dismiss, concluding that § 707(b) is mandatory. The district court found that although the word "may" in a statute usually implies some degree of discretion, this construction "can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." 2008 WL 4368668 at *5, 2008 U.S. Dist. LEXIS 81046 at *12, *quoting United States v. Rodgers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). However, *Rodgers* involved the construction of the word "may" in an Internal Revenue Code collection provision, and despite the observation cited by the district court in *Justice*, in the end the Supreme Court held that the word indicated that the court has discretion.

In another case regarding the construction of the word "may" the Court stated:

It is true that in statutes the word "may" is sometimes construed as "shall." But that is where the context, or the subject-matter, compels such construction. *Supervisors v. United States*, 4 Wall. 435, 18 L.Ed. 419 (1866). Here it does not. This statute appears to have been drawn with great care. Throughout the act the distinction is clearly made between what the Board and the reserve banks "shall" do and what they "may" do.

*Farmers' & Merchants' Bank v. Federal Reserve Bank*, 262 U.S. 649, 662–663, 43 S.Ct. 651, 67 L.Ed. 1157 (1923). *See also United States v. Mass. Water Res. Auth.*, 256 F.3d 36, 51 (1st Cir.2001) ("When Congress uses the permissive 'may' . . ., it is eminently reasonable to presume that the choice of verbiage is a deliberate one, and that, in the context of that statute, 'may' means 'may.'" (internal quotations omitted)).

■ The common-sense principle that "may" indicates discretion is especially applicable "when the same [provision] uses both 'may' and 'shall,' [because] the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." *Kentucky v. United States*, 424 F.3d 1222, 1227 (Fed.Cir.2005) *quoting Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947). This dichotomy is apparent here, where, in contrast and close proximity to § 707(b)(1), under which the court "may dismiss," is § 707(b)(2), where the court "shall presume abuse exists." Further, a comparison of the conversion and dismissal provisions of Chapter 11 (also revised by BAPCPA) demonstrates that Congress clearly knew how to craft a mandatory dismissal provision. Section 1112(b)(1) provides in pertinent part: "[O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court to that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of the creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1) (emphasis added). The dif-

ference between a mandatory and discretionary dismissal provision is even clearer in Chapter 12. *Compare* 11 U.S.C. § 1208(b) (on request of the debtor ... "the court *shall* dismiss") *with* 11 U.S.C. § 1208(c) ("on request of a party in interest ... the court *may* dismiss") (emphasis added).

The *Justice* court based its decision on "legislative intent and obvious inferences to be drawn from the purpose of BAPCPA." But a review of the legislative history of the means test reveals no clear cut sentiment that dismissal is mandatory; rather the original and recurring theme is that debtors who can pay a portion of their debts in Chapter 13 should be required to do so. *See* 144 Cong. Rec. S10766–68 (daily ed. Sept. 23, 1998) (stating proposed means test provision "gives the bankruptcy judge discretion to convert a Chapter 7 case to Chapter 13 upon a motion by the creditor, if the debtor can afford to repay 30 percent of his or her debts"); Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr.L.J. 485, 494 (2005) (noting that in response to a report by the Bankruptcy Review Commission, the Consumer Bankruptcy Reform Act of 1997 would have amended Bankruptcy Code § 707 to require the court, in determining whether a Chapter 7 case should be dismissed for abuse, to consider, among other factors, whether "on the basis of the current income of the debtor, the debtor could pay an amount greater than or equal to 20% of unsecured claims that are not considered to be priority claims."). If a debtor would make no payments under a Chapter 13 plan because of the Congressional protection of retirement plan contributions, it follows that the

debtor's Chapter 7 case should not be considered abusive under § 707(b)(2).[5] The district court in *Justice* stated: "If abuse is presumed under § 707(b)(2) and is not rebutted, it would make no sense to read the statute as allowing bankruptcy courts discretion to disregard the Means Test and allow the debtor to obtain a discharge in Chapter 7, rather than dismiss or convert the case. The bankruptcy court would be placing its judicial imprimatur on an abuse of the provisions of Chapter 7 in the face of congressional attempts to avoid such abuse." 2008 WL 4368668 at *5, 2008 U.S. Dist. LEXIS 81046 at *13. However, if the definition of abuse is the receipt of a Chapter 7 discharge by a debtor who can afford to pay something to unsecured creditors (such as 20% or 30%) under a Chapter 13 plan, there can be no abuse or violation of Congressional intent if the debtor can afford to pay nothing in Chapter 13. *See In re Latone*, 2008 WL 5049460, *3, 2008 Bankr.LEXIS 3206, *7 (Bankr.D.Ariz. Oct. 23, 2008) ("In this case, the 'excess' money that the Debtor has could not be used to fund a Chapter 13 plan. Therefore, the Debtor's filing of a Chapter 7 case is not an abuse of Chapter 7.") The legislative history does not mandate dismissal of a Chapter 7 case where the debtor would make no payments under a Chapter 13 plan.

In *Justice*, the court concluded that the word "may" in § 707(b) is used to indicate discretion only to decide which of two options—dismissal or conversion to Chapter 13—should be exercised in a case where the presumption of abuse arises and is not rebutted. This construction does not comport with the history of the dismissal provision, as BAPCPA added the option of conversion to Chapter 13, while the lan-

---

**5.** Obviously, the case of a debtor who manipulated the means test by instituting or increasing contributions in anticipation of filing Chapter 7 could still be dismissed under the bad faith or totality of circumstances test of § 707(b)(3).

guage that the court "may" dismiss an abusive case has been part of the statute since 1984. *See* Pub.L. No. 98–353, § 312, 98 Stat. 355 (1984). That dismissal was the sole option for 21 years prior to BAPCPA and Congress did not change the word "may" when adding the option to convert to Chapter 13 suggests that the term means more than the choice between the options of dismissal or conversion.

Other clues in the statutory structure also point to Congressional intent that the word "may" in § 707(b) is discretionary. First, even if the presumption of abuse arises, § 704(b)(2) allows the U.S. Trustee to decline to file a motion to dismiss if the U.S. Trustee does not consider such a motion to be "appropriate." It would be curious indeed to grant the U.S. Trustee discretion to determine that dismissal is not appropriate, but to deny discretion to the Bankruptcy Judge to reach that same conclusion. Second, the mandatory provisions for barring bankruptcy relief are found in § 109 of the Bankruptcy Code, not § 707(b). For example, § 109(h)(1) states that an individual "may not be a debtor" unless certain credit briefing requirements are met.[6] Early versions of bankruptcy reform legislation would have added the means test to § 109. In her article about the history of the BAPCPA, Susan Jensen discusses legislation introduced on September 18, 1997, and comments: "With respect to means testing, H.R. 2500 would have amended Bankruptcy Code 109 to make an individual ineligible to be a debtor if such individual had income available to pay creditors as determined pursuant to a specified formula." 79 Am. Bankr.L.J. at 493. Finally, as noted above, the provisions for the dismissal of Chapter 11 and Chapter 12 cases demonstrate that when dismissal is mandatory, the statute uses the term "shall."

The facts in *Justice* are distinguishable, but in *In re Skvorecz,* the situation was virtually identical to ours, and the court denied a motion to dismiss for abuse. 369 B.R. 638 (Bankr.D.Colo.2007). In addition to retirement contributions, Mr. Skvorecz made payments on a 401(k) loan, and his Form 22A showed a presumption of abuse. However, due to the exclusion of the 401(k) loan repayments and pension contributions from the definition of disposable income, the debtor would not have been required to make any payments to unsecured creditors in Chapter 13. Undertaking a "plain meaning" analysis, the *Skvorecz* court noted that Congress used the word "shall" in other places in § 707(b), and could have used that word in place of "may" if it intended dismissal to be mandatory. The court determined that the plain language of the provision was indeed permissive and granted discretion in determining whether to dismiss a Chapter 7 case as abusive. In considering the Congressional intent, the court observed:

> If part of the intent of Congress in tying Chapter 7 relief to a means test, was to require a debtor to repay his creditors if he is able to, then it would be nonsensical that the very payments or expenses which tip the calculation so as to create the presumption of abuse, an indication of an ability to repay, are the same payments or expenses that are excepted from "disposable income" in a Chapter 13.

369 B.R. at 643. *See also In re Latone,* 2008 WL 5049460, at *3, 2008 Bankr.LEXIS 3206 at *7 (Bankr.D.Ariz. Oct. 23, 2008) (finding it would be absurd to dismiss a case as abusive if the debtor was not re-

---

**6.** The construction of the term "may not" in § 109(h) is prohibitive, not permissive. 11 U.S.C. § 102(4). There is no rule of construction for the word "may."

quired to make payments under a Chapter 13 plan).

Since the conversion of the debtor's case to Chapter 13 would result in no payments to creditors, the *Skvorecz* court held that it had discretion to decline to dismiss the case because "such a strict application *under the facts of this case* would lead to an absurd result." 369 B.R. at 643 (emphasis in original). In short, faced with the same facts as this Court (an above-median debtor whose Chapter 7 case is presumed abusive, but whose retirement plan contributions would result in no disposable income and no payments to unsecured creditors in a Chapter 13 case), the court held that the plain language of § 707(b) provided the court with discretion to deny a motion to dismiss for abuse.

■■ This Court concurs with the analysis and result in *Skvorecz*. The overriding purpose of the means test, as evidenced by the earliest legislative history and the President's remarks when signing BAPCPA into law, is to restrict Chapter 7 relief to debtors who cannot afford to make payments to unsecured creditors in Chapter 13.[7] A debtor who is not required to make payments to unsecured creditors in Chapter 13 due to the exclusion of retirement contributions from the definition of disposable income is no different than a debtor who cannot afford to make payments to unsecured creditors in Chapter 13 due to some other protected expense. And, a debtor who cannot afford to make payments to creditors in Chapter 13 or is not required to do so in light of Congressional deference to retirement savings is not abusing a Chapter 7 discharge. In other words, the Court has discretion to deny a motion to dismiss a Chapter 7 case that is presumed abusive under the means test, but would, in complete compliance with Chapter 13, produce no payments to creditors.

■ Although agreeing that § 707(b) is permissive, not mandatory, the discretion to deny a motion to dismiss for presumed abuse should not be exercised lightly. As the Supreme Court instructed in *Rodgers:* "We do emphasize, however, that the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." 461 U.S. at 711, 103 S.Ct. 2132. *See also Skvorecz*, 369 B.R. at 644 n. 12 ("This Court does not read the 'may' so as to afford a court carte blanche discretion to ignore the presumption of abuse and write § 707(b)(2)(A) out of the Code. Rather, the Court reads it as affording the court discretion in a case such as this, where other provisions of the same statute create an inconsistency leading to an absurd result."). Bearing these principles in mind, the evidence here shows that for 15 years the Debtor has been contributing to a qualified retirement plan in an amount that would be excluded from the Chapter 13 disposable income calculation, and upon conversion to Chapter 13, no payments would be made to creditors. This case involves voluntary contributions to a retirement plan, not the repayment of a loan from a retirement plan, a situation which may or may not warrant the exercise of discretion. There is no suggestion that expenses claimed on the Debtor's Form 22A are unreasonable—for example, she has not claimed debt secured by luxu-

---

7. "Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts. Those who fall behind their state's median income will not be required to pay back their debts."

Press Release, White House Press Office, President Signs Bankruptcy Abuse Prevention, Consumer Protection Act (April 20, 2005), *available at* http://www.whitehouse.gov/news/releases/2005/04/20050420–5.html.

ry items or expensive vehicles—or that she has manipulated her income or expenses to qualify for a Chapter 7 discharge. In short, despite the fact that the presumption of abuse has not been rebutted by a showing of special circumstances, the Court should exercise discretion and deny the motion to dismiss because the Debtor's case is not abusive of Chapter 7.

▆ As an alternative to dismissal under § 707(b)(2), the U.S. Trustee argues that the Court should dismiss the Debtor's case under § 707(b)(3) of the Bankruptcy Code. That section states:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

There is no suggestion here that the Debtor filed her petition in bad faith. The U.S. Trustee's Motion is grounded on the second prong of § 707(b)(3), and relies on a First Circuit decision, *In re Lamanna*,[8] for the proposition that a case is an abuse under the totality of the circumstances if the debtor has the ability to fund a Chapter 13 plan. 153 F.3d 1 (1st Cir.1998).

However, as discussed above, the Debtor's retirement contributions would not be included in disposable income in Chapter 13, and therefore no payments would be made under a Chapter 13 plan. The U.S. Trustee contends that the Debtor should reduce or eliminate her retirement contributions to provide creditors a dividend in Chapter 13. But Congress has specifically excluded retirement contributions from the disposable income that must be dedicated to creditors in Chapter 13. It cannot be considered abuse for a debtor to decline to contribute funds the Code allows the Debtor to keep. *See In re Latone, supra* (where only basis of U.S. Trustee's motion was the debtor's payments on 401(k) loans, which would be excluded from disposable income under Chapter 13, case was not dismissed under totality of circumstances); *In re Mati, supra* (debtor's 401(k) contributions were not included in disposable income and did not evidence bad faith under the totality of the circumstances; debtor was merely taking advantage of what the law allowed).

The U.S. Trustee relies on Judge Pepper's decision in *In re Richie* for the proposition that a debtor who does not have the ability to fund a Chapter 13 plan can still have her case dismissed as an abuse of Chapter 7 under the totality of the circumstances test. 353 B.R. 569 (Bankr. E.D.Wis.2006). The facts of *Richie* are readily distinguishable as the debtor's lack of income to fund a Chapter 13 plan in that case was due to the debtor's "choice to be unemployed." *Richie,* 353 B.R. at 577. The debtor had an advanced degree and was extremely selective with respect to

---

**8.** *Lamanna* preceded the adoption of BAPCPA with its addition of the means test as a basis for determining abuse under § 707. Since the overhaul of § 707(b), courts have questioned how much weight to provide a debtor's ability to fund a Chapter 13 plan under the totality of circumstances test. This Court rec-ognized that issue in *In re Nockerts,* 357 B.R. 497 (Bankr.E.D.Wis.2006). While finding that ability to fund a Chapter 13 plan remains relevant to the test, this Court determined that something more than an ability to repay is required for a finding of abuse under the totality of the circumstances.

obtaining employment. Judge Pepper determined that the debtor could easily get a job that would allow her to fund a Chapter 13 plan, and that under the totality of the circumstances, the debtor's case was an abuse of Chapter 7. Here, the Debtor has been employed by the same employer for over 20 years, and the Bankruptcy Code's exclusion of retirement contributions from disposable income, rather than her own unwillingness to accept employment, is the cause of the Debtor's inability to fund a Chapter 13 plan.

In contrast to *Richie*, which bears no factual resemblance to this case, are several cases in which the debtors' retirement contributions or repayment of retirement plan loans were not considered abusive under the totality of the circumstances. In *In re Tucker*, the U.S. Trustee sought dismissal under § 707(b)(3) arguing that the debtor could fund a Chapter 13 plan through the monthly payments deducted from his salary for a 401(k) contribution and for repayment of a 401(k) loan. 389 B.R. 535 (Bankr.N.D.Ohio 2008). Under a totality of the circumstances analysis, the court concluded that it was not an abuse for the debtor to fund his retirement. The debtor's overall budget reflected a very modest lifestyle, and the 401(k) payments were not extravagant or unusual. The court denied the motion to dismiss. Similarly, in *In re Beckerman*, the court determined that the debtors' ages, inadequacy of their retirement portfolio and the fact that the wife's contributions alone would not sustain two people in retirement, rendered the debtor husband's monthly 401(k) contributions reasonable and necessary; although the court denied the motion to dismiss based on the retirement contributions, the court dismissed the case on other grounds. 381 B.R. 841 (Bankr. E.D.Mich.2008). And, in *In re Latone*, *supra*, the court declined to dismiss a case under the totality of the circumstances test where due to the debtor's retirement plan loan obligations, the debtor would make no payments to creditors under a Chapter 13 plan. The *Latone* court held that the U.S. Trustee did not carry its burden of proof that the debtor's case was an abuse under the totality of the circumstances where the U.S. Trustee failed to show that the debtor could fund a Chapter 13 plan. *Latone*, 2008 WL 5049460 at *3, 2008 Bankr.LEXIS 3206 at *7. *See also In re Smith*, 2007 WL 1836874, 2007 Bankr.LEXIS 2173 (Bankr.N.D. Ohio June 22, 2007) (where only beneficiary of Chapter 13 plan would be priority tax creditors, and debtors could not fund the payment necessary to pay the priority taxes, there was no benefit to creditors of conversion to Chapter 13, and debtor's case not dismissed under § 707(b)(3)).

This case is similar to *Tucker, Beckerman* and *Latone*, and completely distinguishable from *Richie*. The Debtor's lifestyle appears modest: she drives an old vehicle, has no luxury items or extravagant expenses, and her retirement contributions are a reasonable proportion of her income. There is no clear evidence in the record of the Debtor's age or when she might retire. However, the burden of proof to show that the Debtor is young, healthy and far enough from retirement to replenish her retirement fund without hardship rests on the U.S. Trustee. The U.S. Trustee has not met the burden of proof that the Debtor's case is an abuse of Chapter 7 under the totality of the circumstances.

### Conclusion

Although the U.S. Trustee has established that the Debtor's case is presumed an abuse under § 707(b)(2), and the Debtor has not rebutted that presumption by showing special circumstances, the statute provides that the Court *may* dismiss the case, and the Court has discretion to deny

the U.S. Trustee's Motion. That discretion should be exercised sparingly, and in this case, where the Debtor's regular, longstanding retirement contributions would render a Chapter 13 conversion meaningless, and the Debtor appears to have no other extravagant or unreasonable expenses, the Court will deny the § 707(b)(2) Motion. With respect to § 707(b)(3), the U.S. Trustee has not met the burden of proof to establish abuse under the totality of the circumstances.

IT IS THEREFORE ORDERED: that the U.S. Trustee's Motion to Dismiss under 11 U.S.C. §§ 707(b)(1) and 707(b)(3) is denied.