NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
The immediate issue relates to the Biosi-milar Price Competition and Innovation Act (BPCIA) and certain obligations of the innovator/patentee (called the “reference product sponsor,” or “Sponsor”) and the subsection (k) applicant. Subsection (k) authorizes a biosimilar applicant to use the Sponsor’s clinical safety and efficacy data in order to obtain FDA license approval for commercial marketing of the biosimilar product. By acting under subsection (k) the applicant need not obtain its own clinical data for its biosimilar product, and can receive FDA licensure by showing that “the biological product is biosimilar to a reference product,” 42 U.S.C. § 262(k), and has the same characteristics of safety, efficacy, and purity. Id.
To facilitate identification of and resolution of any patent issues, the BPCIA requires the subsection (k) applicant to notify the Sponsor at two critical stages of FDA review of the subsection (k) application. I agree with the court that notice of issuance of the FDA license is mandatory, and that this notice starts the 180-day stay of commercial marketing, in accordance with 42 U.S.C. § 262(Z)(8)(A). Thus I join Part A, Part (B)(II), and Part B(V) of the court’s opinion.
*1363 However, notice of acceptance of the filing of the subsection (k) application is also mandatory, along with the accompanying documentary and information exchanges set in the BPCIA in accordance with 42 U.S.C. § 262G)(2)(A). I respectfully dissent from the court’s holding that this activity is not required because the Sponsor might file an infringement suit in which it might learn this information though discovery.
Sandoz did not comply with either of these statutory requirements. These deliberate violations of the requirements of the BPCIA forfeit Sandoz’ access to the benefits of the BPCIA.
I
Patent dispute resolution under the BPCIA has two phases. The “early phase” starts when the subsection (k) application is accepted by the FDA for review, and technical and patent information are then exchanged. The “later phase” starts when the FDA approves the biosimi-lar for commercial marketing. I comment only briefly on this later phase, for I agree, as the court holds, that 42 U.S.C. § 262(Z X8) requires that this phase of inquiry and dispute resolution commences when the subsection (k) applicant notifies the Sponsor, after the FDA license is granted. My concern is that my colleagues on this panel do not apply, to the earlier “shall provide” words, the same mandatory meaning as for subsection GX8XA):
§ 262(Z )(8)(A) Notice of commercial marketing. — The subsection (k) applicant shall provide notice to the reference product sponsor not later than 180 days before the date of the first commercial marketing of the biological product licensed under subsection (k).
(Emphases added). The BPCIA explicitly states that after licensure and before commercial marketing the Sponsor may seek a preliminary injunction while the patent aspects are resolved:
§ 262(Z )(8)(B) Preliminary injunction. — After receiving the notice under subparagraph (A) and before such date of the first commercial marketing of such biological product, the reference product sponsor may seek a preliminary injunction prohibiting the subsection (k) applicant from engaging in the commercial manufacture or sale of such biological product until the court decides the issue of patent validity, enforcement, and infringement [of any patent identified in the early stage or other defined proceedings.]
(Emphasis added). Sandoz proposed to circumvent this provision and launch its biosimilar product immediately upon its FDA licensure.
I share the court’s interpretation of this statutory provision, which implements the purpose of the BPCIA “to ensure that litigation surrounding relevant patents will be resolved expeditiously and prior to the launch of the biosimilar product, providing certainty to the applicant, the reference product manufacturer, and the public at large.” Biologies and Biosimilars: Balancing Incentives for Innovation: Hearing Before the Subcommittee On Courts and Competition Policy of the House Committee On the Judiciary, 111th Cong. 9 (July 14, 2009) (statement of Rep. Eshoo) (emphasis added). The BPCIA requires the court to give effect to the intent of Congress. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (“To discern Congress’ intent we examine the explicit statutory language and the structure and purpose of the statute.”)
II
The BPCIA provides for participants’ recognition of potential patent issues at an *1364 early stage, and requires that as soon as the FDA accepts the biosimilar application for review, the subsection (k) applicant shall notify the Sponsor, and exchanges of patent-related information shall commence. Details are set forth in 42 U.S.C. § 262(Z )(2). My colleagues hold that compliance with these early notice and information provisions is not mandatory. I cannot agree, for: “The word ‘shall’ is ordinarily the language of command.”' Alabama v. Bozeman, 533 U.S. 146, 153, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001).
The purpose of subsection 262(Z) is to initiate patent-related activity, to exchange relevant information, to facilitate negotiations, and to expedite any litigation. Subsection (Z)(2)(A) requires the subsection (k) applicant to notify the Sponsor within 20 days after the FDA accepts the subsection (k) application for review, and to describe the manufacturing process:
§ 262(Z )(2)(A) Subsection (k) application information. — Not later than 20 days after the Secretary notifies the subsection (k) applicant that the application has been accepted for review, the subsection (k) applicant shall provide to the reference product sponsor a copy of the application submitted to the Secretary under subsection (k), and such other information that describes the process or processes used to manufacture the biological product that is the subject of such application.
(Emphases added). Sandoz did not provide this information, although it is required, and the BPCIA provides for confidentiality:
§ 262(i )(l)(B)(i) Provision of confidential information. — When a subsection (k) applicant submits an application under subsection (k), such applicant shall provide to the persons described in clause (ii), subject to the terms of this paragraph, confidential access to the information required to be produced pursuant to paragraph (2) and any other information that the subsection (k) applicant determines in its sole discretion to be appropriate.
(Emphases added).
This designated exchange of information is fundamental to the BPCIA purposes of efficient resolution of patent issues. However, my colleagues hold that compliance by the applicant is not mandatory, citing § 262(Z )(9)(C), which authorizes suit by the Sponsor if the applicant does not provide the paragraph (2)(A) information:
§ 262(Z)(9)(C) Subsection (k) application not provided. — If a subsection (k) applicant fails to provide the application and information required under paragraph (2)(A), the reference product sponsor, but not the subsection (k) applicant, may bring an action under section 2201 of Title 28, for a declaration of infringement, validity, or enforceability of any patent that claims the biological product or a use of the biological product.
(Emphases added). This provision for declaratory action by the Sponsor is limited to “product” and “use” claims, and does not include manufacturing process patents, although the legislative record makes clear that for biosimilars such patents may be highly material, and were so recognized during enactment. Amgen states that its patents here at issue relate primarily to manufacture.
I cannot agree that this provision excuses compliance by the subsection (k) applicant, even when such declaratory action is brought. Subsection (Z )(9)(C) provides declaratory jurisdiction only for product or use claims. Absent adequate factual support in a complaint for manufacturing method claims, declaratory jurisdiction may be unsupported. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (“To survive a motion *1365 to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’ ”) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
The balance established in the BPCIA requires the statutorily identified disclosures at the threshold, in order both to avert and to expedite litigation. This purpose pervades the legislative record, as interested persons debated which provisions would be mandatory, and which permissive. See, e.g., Biologies and Bios-imilars: Balancing Incentives for Innovation: Hearing Before the Subcommittee on Courts and Competition Policy of the House Committee on the Judiciary, 111th Cong, passim (2009) (debating the provisions of H.R. 1548, which provided for mandatory patent exchange, and H.R. 1427, which provided for discretionary patent exchange). Compare also S. 623, 110th Cong. § (3)(a)(2)(k)(17)(E) (2007) (“nothing in this paragraph requires an applicant or prospective applicant to invoke the [patent notification and exchange] procedures set forth in this paragraph”) with S. 1695, 110th Cong. § (2)(a)(2)(i )(2)(A) (2007) (the subsection (k) applicant “shall provide” application and manufacturing information). See Chickasaw Nation v. United States, 534 U.S. 84, 93, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (“We ordinarily will not assume that Congress intended ‘to enact language that it has earlier discarded in favor of other language.’ ” (citations omitted)).
The BPCIA as enacted leaves no uncertainty as to which of its provisions are mandatory and which are permissive. For example, immediately after the “shall” provision of subsection (l )(2)(A), ante, subsection (i)(2)(B) states that a subsection (k) applicant
may provide to the reference product sponsor additional information requested by or on behalf of the reference product sponsor.
(Emphases added). “[W]hen the same Rule uses both ‘may’ and ‘shall’, the normal inference is that each is used in its usual sense — the one act being permissive, the other mandatory.” Anderson v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947).
In United States ex rel. Siegel v. Thoman, 156 U.S. 353, 359-60, 15 S.Ct. 378, 39 L.Ed. 450 (1895), the Court stated that when Congress uses the “special contradistinction” of “shall” and “may,” no “liberty can be taken with the plain words of the statute.” As reiterated in Sebelius v. Cloer, — U.S.-, 133 S.Ct. 1886, 1894, 185 L.Ed.2d 1003 (2013), “[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” (alteration and internal quotation marks omitted). The BPCIA gestated during more than four years of study and debate. The record contains frequent reference to the experience of the Hatch-Waxman Act, as the BPCIA departed from that Act in seeking to “balance innovation and consumer interests” in the new and promising scientific era of biosimilars. BPCIA, Pub.L. No. 111-148, § 7001(b), 124 Stat. 119, 804 (2010). Fidelity to that balance is the judicial obligation.
The details enacted and included in the BPCIA demonstrate the rigor of the statute and its compromises. The BPCIA requires judicial implementation that conforms to “the design of the statute as a whole and to its object and policy.” Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). Subsection (k) and subsection (l) are com *1366 ponents of an integrated framework; to enjoy the benefits of subsection (k), the biosimilar applicant is obligated to comply with subsection (Z). Even on the district court’s (and my colleagues’) misplaced theory that subsection (Z )(9)(C) excuses compliance with subsection (Z )(2)(A), this would extend only to product and use claims, it does not excuse compliance as to manufacturing and process claims.
The BPCIA reflects an explicit balance of obligations and benefits. When a beneficiary of the statute withholds compliance with provisions enacted to benefit others, the withholder violates that balance. The consequences of the majority’s ruling are significant, for the structure of the BPCIA requires that the subsection (k) applicant comply with the information exchange provisions, as a threshold to resolution of the Sponsor’s patent rights.[1]
Subsection (Z )(9) provides jurisdiction in the district court when a subsection (k) applicant fails to comply with subsection (Z), but it does not ratify non-compliance. While “a party may waive any provision, either of a contract or of a statute, intended for his benefit,” United States v. Mezzanatto, 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), the party cannot waive or disregard a provision that benefits those in an adverse position. The provisions of 35 U.S.C. § 262(Z )(9) function as a continuing prohibition on a party who fails to comply with some aspect of the patent exchange provisions. That is, subsection (Z )(9)(C) prevents a non-compliant party from obtaining relief through a declaratory judgment action, while that prohibition is lifted as to the aggrieved party. Subsection (Z)(9)(C) states that a “reference product sponsor, but not the subsection (k) applicant, may bring” a declaratory judgment action “for a declaration of infringement, validity, or enforceability for any patent that claims the biological product or use of the biological product” when a subsection (k) applicant fails to provide the information required under subsection (Z )(2)(A).
35 U.S.C. § 271(e)(2)(C)(ii) similarly states that it shall be an act of infringement if the applicant fails to provide the information required under paragraph (Z )(2)(A). However, this does not diminish the obligation set by section (Z)(l)(B)(i) that the subsection (k) applicant “shall provide ... confidential access to the information required to be produced pursuant to paragraph (2).” Such obligation is mandatory.
Departure from the statutory obligation, to achieve purposes that the legislation intended to curtail, should not be judicially ratified. See Cannon v. Univ. of Chicago, 441 U.S. 677, 690, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (disregard of a statute is a wrongful act). It is not denied that Sandoz obtained the benefit of the Amgen data in filing under subsection (k). Sandoz should be required to respect its obligations, in fidelity to the statute. I respectfully dissent from the majority’s failure to require compliance with the obligations of the BPCIA.

. The record recites the benefits of subsection (k) for biosimilar applicants. A study for the Congressional Research Service cites a Tufts report that found in 2006 the "average cost to develop a new biotechnology product is $1.2 billion." Follow-On Biologies: The Law and Intellectual Property Issues, CRS Report for Congress, Professor John Thomas, January 15, 1014, passim, n. 32. The record explains that clinical safety and efficacy studies constitute the major portion of this development cost, and that subsection (k) authorizes the biosimi-lar applicant to rely on these data that the Sponsor provided to the FDA.